## Commonwealth, Appellant, *v.* Tick, Inc.

Argued November 17, 1966.  Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused October 22, 1967.

*Arlen Specter*, District Attorney, with him *David L. Creskoff* and *Alan J. Davis*, Assistant District Attorneys, and *Richard A. Sprague*, First Assistant District Attorney, for Commonwealth, appellant.

*Theodore R. Mann*, with him *Lawrence E. Hirsch*, *Peter M. Stern*, and *Goodis, Greenfield, Narin & Mann*, for appellees.

OPINION PER CURIAM, June 29, 1967:

The District Attorney of Philadelphia filed a complaint in equity to enjoin the defendants in this case from operating the premises at 1419 Susquehanna Avenue, known as the Wheel Bar, as a restaurant licensed for the sale of liquors and malt beverages, proceeding under the Act of April 12, 1951, P. L. 90, §611, 47 P.S. §6-611. The complaint averred that the Wheel Bar was conducted and maintained in such a manner as to constitute a nuisance in that it permitted loud, boisterous noises and disturbances, encouraged misbehavior, fights, stabbings and cuttings within and without the premises, permitted patrons to subject the public to verbal abuse in the form of obscene and vulgar language, permitted the sales of beverages to persons in an intoxicated condition, and maintained the premises in such an unhealthy manner as to constitute a menace to the public health.

Preliminary objections filed by the defendants were overruled and the case went on to a hearing, which lasted six days. After the taking of considerable testimony, the Court found, inter alia, the following facts:

"Although a porter is employed by the bar who thoroughly cleans the inside and outside of the taproom premises every morning before the bar opens, and who stops back once or twice a day to sweep the inside of the premises, the bar and its lavatory facilities become dirty after many hours of continuous business because of the heavy traffic of customers.

"Groups of men gather in front of the Wheel Bar on a daily basis and remain there from the early morning until the late evening or early morning hours of the following day."

"A number of the group of men gathered in front of the Wheel Bar were visibly intoxicated.

"Those gathered in front of the Wheel Bar are loud, boisterous and noisy and constantly use vile and ob-

scene language to the annoyance of the peaceable residents nearby.

"Those gathered in front of the Wheel Bar constantly address passing pedestrians, males or females, in an obscene manner."

"Female members of the traveling public are apprehensive in using the public highway in passing the Wheel Bar."

"Numerous persons standing in front of the Wheel Bar have filled wine glasses and bottles of beer in their hands."

"The wine glasses held by those outside of the Wheel Bar are the same glasses utliized for the sale of wine within the Wheel Bar."

"Visibly intoxicated persons have been seen on numerous occasions leaving the Wheel Bar."

"The owner of the Wheel Bar knew of the conditions existing immediately outside of the Wheel Bar."

"The owner of the Wheel Bar has never called the police concerning those gathered in front of his premises."

"When the police do arrive to arrest intoxicated persons outside of the Wheel Bar, some of those persons enter the Wheel Bar to avoid arrest."

"The patrons of the Wheel Bar within the premises regularly used obscene and vulgar language."

"On September 18, 1965 the premises of the Wheel Bar was maintained in a filthy, unsanitary condition."

"On October 8, 1965 the premises of the Wheel Bar was maintained in a filthy, unsanitary condition."

"On January 7, 1966 the premises of the Wheel Bar was filthy and unsanitary."

"On January 8, 1966 the premises of the Wheel Bar was filthy and unsanitary."

"On September 19, 1965 a visibly intoxicated person was served alcoholic beverages by the Wheel Bar."

"On October 8, 1965 a visibly intoxicated person was served alcoholic beverages by the Wheel Bar.

"On January 7, 1966 three visibly intoxicated persons were served alcoholic beverages by the Wheel Bar.

"On January 8, 1966 seven visibly intoxicated persons were served alcoholic beverages by the Wheel Bar."

"On January 14, 1966 the bartender of the Wheel Bar was visibly intoxicated.

"On January 20, 1966 eight visibly intoxicated persons were observed drinking alcoholic beverages within the Wheel Bar."

After announcing these findings of fact, the court filed, inter alia, the following conclusions of law:

"The Act of April 12, 1951, . . . P. L. 90, §611 (47) (P.S. §6-611) and the common law are a proper basis for an equity suit to sustain an injunction to prohibit the use of a building for the sale of alcoholic, malt or brewed beverages.

"Respondents have frequently conducted the business at the Wheel Bar to permit loud, boisterous and unseemly noises to the common nuisance and disturbance of the neighborhood in violation of the Liquor Code, Article I, §102, 47 P.S. §1-102.

"Respondents have maintained premises 1419 Susquehanna Avenue, Philadelphia, Pennsylvania in an unsanitary manner as to constitute a violation of Article I, §107 of the Liquor Code (47 P.S. §1-102 'RESTAURANT').

"Respondents have on occasion served alcoholic beverages to visibly intoxicated persons in violation of Article VI, §493 (1) of the Liquor Code, 47 P.S. §4-493(1)."

"The operation of the Wheel Bar was a causative factor interfering with the rights of persons residing in the immediate area who are entitled to peace, quiet,

safety and freedom from offensive language and conduct on the part of those 'winos' who frequent the area outside of the Wheel Bar.

"The operation of the Wheel Bar prior to but especially during the period from September 1965 through January 22, 1966 constitutes a nuisance as defined in the Pennsylvania Liquor Control Act, cited above."

In spite of these findings of fact and conclusions of law, the court did not enjoin the operation of Wheel Bar. Instead, it entered a decree ordering the nuisance to be abated.

After studying the record, we conclude that the action of the court cannot be supported in law or in fact, we find further that the court abused its discretion in reaching its decision. It was not enough to place the owners of the Wheel Bar under bond to obey the Liquor Code since all licensees are under bond to live up to the requirements proclaimed by the code. Nor was the court justified in suspending the applicable law because the owners of the Wheel Bar had endeavored, in some manner, to abate the averred nuisance after the suit in equity had been filed. Although the appellees argue strenuously that they cannot be held liable for what occurred outside their premises, the evidence is clear and, indeed, so found by the trial court, that there was a causal relationship between the deplorable situation outside the premises and what went on inside the Wheel Bar.

Reversed and record remanded for entering of an appropriate decree, each party to pay own costs.

———

Dissenting Opinion by Mr. Justice Eagen:

This action in equity was instituted under the provisions of the Liquor Code, Act of April 12, 1951, P. L. 90, §611, as amended, 47 P.S. §6-611. The statute provides in relevant part that any building or place (ex-

cept a private residence) wherein liquor, alcohol or malt beverages are possessed or sold in violation of the Liquor Code is a common nuisance; and if the existence of such a nuisance is established, the court *"in its discretion"*[1] may enjoin further possession and sale of alcohol on the premises; *or* enjoin use and occupancy of the premises for any purpose for the period of one year; *or* permit the use and occupancy to continue providing that a penal bond is filed in the sum of not less than $500, conditioned upon the fact that no further violations of the act shall occur.

The complaint in the instant case included several serious allegations which the evidence did not substantiate. And after an extensive hearing, it became apparent that the principal problem which concerned the residents of the neighborhood was the presence of many drunks on the sidewalks and streets near the Wheel Bar, who constantly abused passers-by with word and action.

The chancellor, whose findings and conclusions were subsequently approved by the court en banc, found that the deplorable condition, described before, existed all over the immediate neighborhood, and for years before the present owner of the Wheel Bar took over the management; that the present internal management of the Wheel Bar "provides very little source of annoyance to the neighbors"; and, that *"the real nuisance emanates"* from drunks and "winos" who come from all over the city and purchase wine in a nearby Commonwealth-operated liquor store and who then congregate and openly imbibe the wine from the bottles in the street. Movies introduced in evidence showed intoxicated persons coming out of the liquor store with bottles purchased therein and groups gathered in the street waiting their turn to obtain a drink from the bottles.

---

[1] 47 P.S. §6-611(c). Emphasis supplied.

The chancellor concluded that to hold the management of the licensed premises responsible for the conditions existing in the street, which emanated from the operation of the Commonwealth's own liquor store, would be a rank injustice. However, he found that since certain enumerated violations of the Liquor Code had occurred within and on the licensed premises that a nuisance as defined by the statute did exist. But, exercising the discretion clearly given by the statute, the chancellor decided against imposing the severe sanctions statutorily permitted and ordered the filing of a bond in the sum of $10,000, to guarantee no further violations would ensue or be tolerated. The conclusion against the imposition of a more severe penalty took into account: (1) that the licensee had operated similar businesses for many years at other locations with an unblemished record; (2) that the business and premises involved were purchased in 1964 and with improvements, which included rebuilding and renovating both the interior and exterior, the investment exceeded $60,000; (3) that the premises could not be used for another commercial purpose without a further substantial expenditure.

It is fundamental that for this Court to rule the trial court abused its discretion, it must clearly appear from the record that the law was overridden or misapplied, or the judgment entered was manifestly unreasonable, or was the result of partiality, bias or ill will. See *Mielcuszny v. Rosol,* 317 Pa. 91, 176 A. 236 (1934).

After an examination of the record, I personally am not persuaded that such an abuse of discretion occurred in the court below.

Finally, I would analogize the instant situation to one wherein a trial judge sentences a defendant following his conviction for violation of a criminal statute, for cut to its marrow, that is precisely what this case

involves, viz., a sentence or punishment for violation of the law. If the trial judge sentences a defendant to punishment *within the limits the statute prescribes* but does not impose the maximum punishment allowed, would this Court even entertain an appeal or complaint by the district attorney asserting the punishment imposed was not as severe as it should have been? Or, further, would this Court on appeal change the sentence and impose a more severe one? I personally know of no such precedent and, until this case, never even assumed I would "live to see the day".

I dissent.

Mr. Justice COHEN and Mr. Justice O'BRIEN join in this dissenting opinion.