## Commonwealth v. D'Andrea

*Craig Kalemjian, Assistant District Attorney,* for Commonwealth.
*A. Alfred Delduco,* for defendants.

SUGERMAN, *J.,* March 12, 1974—The District Attorney of Chester County filed a complaint in

equity in the name of the Commonwealth, pursuant to the Act of April 12, 1951, P.L. 90, art. VI, sec. 611, 47 P.S. §6-611 (hereinafter, the "Liquor Code"), seeking to enjoin the operation of the Conestoga Farms Tavern (hereinafter, the "Tavern"), a bar and restaurant owned by a partnership consisting of the three named defendants. The complaint alleges in essence that the operation of the Tavern constitutes a common nuisance and seeks a permanent injunction prohibiting the operation of the premises as a restaurant licensed for the sale of liquors and malt or brewed beverages.

A rule was granted upon defendants on February 25, 1974, requiring them to show cause why the injunction as prayed for should not issue. On the same day, a temporary writ of injunction was issued restraining defendants from operating the bar and restaurant until hearing.

In accordance with the mandate of Pa. R.C.P. 1531(d), a hearing was held on March 4, 1974, to determine the propriety of continuing the temporary injunction, such hearing concluded on March 7, 1974. At the hearing, counsel for the parties agreed that, in addition to determining the propriety of continuing the temporary injunction, the court should consider such hearing as a final hearing on the merits and thereafter render its adjudication on all issues in the case.

At the hearing, the Commonwealth endeavored to prove a series of allegations contained in paragraphs 8 through 23 of its complaint relating to violations of the Penal[1] and Crimes[2] Codes of Pennsylvania. The court permitted such testimony over

1. Act of June 24, 1939, P.L. 872, secs. 101, et seq., 18 P.S. §§4101, et seq.

2. Act of December 6, 1972, P.L. 1068 (No. 334), secs. 1, et seq., eff. June 6, 1973, 18 Pa. C.S. §§101, et seq.

timely objection by defendants, reserving a ruling thereon until argument. Following argument, defendants' objection was sustained upon the ground of relevancy and, on motion of defendants, all testimony relating to the foregoing paragraphs and not directly bearing upon specific violations of section 493 of the Liquor Code, (47 P.S. §4-493) was stricken.

Counsel for the parties thereafter stipulated to certain allegations contained in paragraphs 1 through 7 of plaintiff's complaint, the substance of which is set forth in the findings of fact, below.

## ISSUE

The single issue for determination is whether the evidence establishes that defendants have operated, and permitted the operation of the establishment known as the Conestoga Farms Tavern in such a manner as to constitute a common nuisance.

## FINDINGS OF FACT

1. Defendants, Peter P. D'Andrea, Ida E. D'Andrea, husband and wife, and Giralamo P. D'Andrea, their adult son, are co-partners trading as Conestoga Farms Tavern, and operate a bar and restaurant business under that name at Route 30 and Malin Road, in East Whiteland Township, Chester County, Pa.

2. The premises in which such business is conducted was acquired by defendants, Peter P. D'Andrea and Ida E. D'Andrea in 1953 and is yet owned by them.

3. In 1957, defendants Peter P. D'Andrea and Ida E. D'Andrea acquired restaurant liquor license no. R-18631 and commenced the operation of a bar

and restaurant, operating the same until October 31, 1972, whereupon the said license was transferred to a partnership consisting of the said Peter P. D'Andrea and Ida E. D'Andrea, and their son, defendant Giralamo P. D'Andrea, trading as Conestoga Farms Tavern; and such license as transferred yet bears no. R-18631.

4. On or about the date of the transfer of the license, defendants Peter P. D'Andrea and Ida E. D'Andrea as owners of the premises, entered into a lease agreement with the partnership, leasing the premises to the partnership, which lease is yet in effect.

5. On September 18, 1957, the Pennsylvania Liquor Control Board issued a citation against restaurant liquor license no. R-18631 and defendants Peter P. D'Andrea and Ida E. D'Andrea, as licensees, for the sale of alcoholic beverages to visibly intoxicated persons, and the sale of alcoholic beverages on Sunday; as the result of such citation, the said license was suspended for a period of 25 days.

6. On May 4, 1965, the Pennsylvania Liquor Control Board issued a citation against restaurant liquor license no. R-18631 and defendants Peter P. D'Andrea and Ida E. D'Andrea, as licensees, for the sale of alcoholic beverages at unlawful hours and permitting gambling upon the licensed premises; as the result of such citation, the said license was suspended for a period of 30 days.

7. On November 22, 1971, the Pennsylvania Liquor Control Board issued a citation against restaurant liquor license no. R-18631 and defendants Peter P. D'Andrea and Ida E. D'Andrea, as licensees, for permitting minors to frequent the licensed premises, and permitting entertainers to contact and associate with patrons; as the result of such

citation, the licensees paid a fine in the sum of $250.

8. On December 14, 1973, defendant Giralamo P. D'Andrea, as a licensee of restaurant liquor license no. R-18631, or as an officer, employe or servant of a licensee, was charged in a criminal complaint issued by a Chester County magistrate with permitting lewd, immoral or improper entertainment upon the foregoing licensed premises on November 29, 1973, November 30, 1973 and December 13, 1973; a preliminary hearing was held upon such charges on January 3, 1974, and on the same date, following such hearing, the magistrate found a prima facie case against defendant Giralamo P. D'Andrea, and bound him over for action by a Chester County Grand Jury.

9. On December 15, 1973, defendants Peter P. D'Andrea, Ida E. D'Andrea and Giralamo P. D'Andrea, as licensees, were charged by the Pennsylvania Liquor Control Board with permitting lewd, immoral or improper entertainment and permitting entertainers to contact and associate with patrons upon the foregoing licensed premises at a time or times not otherwise specified, and with operating the licensed premises in a noisy and disorderly manner; no citation against the said license or licensees has yet issued upon such charges.

10. Defendants, or some of them, as licensees of restaurant liquor license no R-18631, at diverse times between September 18, 1957, and November 22, 1971, did themselves, or did permit others to, sell alcoholic beverages to visibly intoxicated persons, sell alcoholic beverages on Sunday, sell alcoholic beverages at unlawful hours, permit gambling upon the licensed premises, permit minors to frequent the licensed premises and per-

mit entertainers to contact and associate with patrons.

## DISCUSSION

The Commonwealth in its complaint alleges various conduct by defendants, and activities upon the licensed premises, at diverse times, in support of its request for a permanent injunction. Such conduct falls within two general categories: (1) conduct constituting violations of the Penal or Crimes Codes of Pennsylvania but not specifically prohibited as unlawful acts relating to liquor, malt and brewed beverages, and licensees, as set forth in section 493 of the Liquor Code, and (2) conduct specifically proscribed by section 493 of the Liquor Code.

At hearing, the Commonwealth, over strenuous and continuing objection by defendants, introduced testimony to prove conduct in the first category, viz., violations of the Penal and Crimes Codes not specifically proscribed by section 493 of the Liquor Code. Such testimony was received subject to a later evidentiary ruling by the court, and at the conclusion thereof, the court requested argument on the narrow issue of whether, under the language of section 611 of the Liquor Code, proof of such violations, without reference to proof of acts specifically proscribed by section 493 of the Liquor Code, permitted a court to find that premises upon which such violations occurred were a common nuisance.

At argument, the Commonwealth urged that violations of the Penal and Crimes Codes, although not specifically proscribed by section 493 of the Liquor Code, should be considered in determining whether a common nuisance exists, or section 611 of the

Liquor Code becomes a nullity. The Commonwealth further argued that the words "common nuisance," as used in section 611, includes not only the definition thereof set forth in that section, but includes as well the entire body of the common law relating to nuisances.

Defendants, on the other hand, urged that the Commonwealth be limited to proof of conduct specifically proscribed by the Liquor Code, and, inasmuch as violations of the Penal and Crimes Codes are not specifically proscribed by the Liquor Code, evidence thereof is not relevant.

Following argument, the court adopted the position of defendants, ruled that evidence of violations not specifically set forth in section 493 of the Liquor Code was irrelevant, and struck such evidence from the record.

Section 611 of the Liquor Code provides the following:

"Any room, house, building, boat, vehicle, structure or place, except a private home, where liquor, alcohol or malt or brewed beverages, are . . . sold [or] . . . offered for sale, . . . in violation of this act . . . are hereby declared to be common nuisances."

Section 611 further permits the district attorney to bring an action to enjoin "any nuisance defined in this act."

The language of the section appears to be plain and unambiguous. Under 611, the district attorney is permitted to maintain an action to enjoin any nuisance defined by the Liquor Code. A nuisance is defined by the Liquor Code in section 611 as any "room, house, building, boat, vehicle, structure or place" where liquor, alcohol or malt or brewed beverages are sold in violation of "this act." The words "this act" obviously refer to the Liquor Code. The

conduct constituting violations of the Liquor Code as the same pertains to defendants, is set forth in section 493 thereof. It follows logically that we must look to such latter section to determine the nature of the violations that will permit the court to find a "common nuisance" within the meaning of section 611.

The Commonwealth, however, points to section 104 of the Liquor Code, requiring a liberal construction of the code, in order to support its theory that the court should expand the definition of the term "common nuisance" as it appears in section 611 to include the body of the common law treating nuisances.

When the language of a statute is plain and unambiguous, and conveys a clear meaning, we need not resort to rules of statutory construction, and such statute must be given its plain and obvious meaning without reference to such rules: Davis v. Sulcowe, 416 Pa. 138, 205 A. 2d 89 (1964); Yellow Cab Co. of Philadelphia v. Unemployment Compensation Bd. of Review, 170 Pa. Superior Ct. 625, 90 A. 2d 599 (1952). The legislature must have intended to mean that which it plainly expressed: Commonwealth v. Rieck Investment Corp., 419 Pa. 52, 213 A. 2d 277 (1965), and while the Liquor Code is to be liberally construed in favor of its police powers, its clear and unambiguous wording may not be ignored and it may not be given an unreasonable interpretation: DeAngelis Liquor License Case, 183 Pa. Superior Ct. 388, 133 A. 2d 266 (1957).

Lastly, as noted, the Commonwealth argues that, unless it is permitted to introduce evidence of violations other than those specified in section 493, the authority granted the district attorney by section

611 is a nullity, and the Commonwealth is without a remedy, inasmuch as the district attorney may not bring an action in his official capacity to abate a common nuisance unless specifically authorized by statute.

It is, of course, quite true that the powers and duties of a district attorney are expressly defined by statute: Reilly v. Rankin, 142 Pa. Superior Ct. 51, 15 A. 2d 478 (1940). It is equally true, however, that the district attorney, in order to invoke the power conferred upon the court by section 611 of the Liquor Code, need only prove violations of the Liquor Code itself. In so doing, he is merely exercising a power expressly conferred upon him by statute. If he cannot so prove, however, he is not without a remedy. In the event the district attorney wishes to invoke the power of equity to abate a common nuisance as broadly defined by the common law, and bases such determination upon continuing violations of penal statutes other than the Liquor Code, he has such authority. See for example: Duggan v. Guild Theatre, Inc., 436 Pa. 191, 258 A. 2d 858 (1969), and the instructive language of Justice Roberts at page 195:

"We agree that [the District Attorney's] authority cannot be derived from that statute. But that does not mean he lacks standing to institute an equitable proceeding here, for we cannot say that the legislature was required to statutorily create standing to enable the District Attorney to seek an injunction against an obscene movie. Obscenity is a public evil, long recognized in this Commonwealth to result in a particular type of public harm. [Citation omitted] Where, as here, the District Attorney is seeking to protect the public from a continuing dissemination of an allegedly obscene work, we can-

not say that he lacks standing to vindicate this public right in a court of equity."

It must therefore follow that the district attorney in the case at bar, in his official capacity, might have maintained an action in equity seeking to abate the continuing violations of the penal statutes alleged to have occurred in and about the premises of the Conestoga Farms Tavern had he chosen so to do. We are, of course, aware that equity will not restrain an act merely because it is immoral, illegal or constitutes a criminal offense: Commonwealth, ex rel. Costa v. Boley, 441 Pa. 495, 272 A. 2d 905 (1971); Commonwealth v. Smith, 266 Pa. 511, 109 Atl. 786 (1920). An injunction may be granted, however, upon the motion of public authorities if criminal acts sought to be enjoined constitute a public nuisance: Pennsylvania Society for Prevention of Cruelty to Animals v. Bravo Enterprises, 428 Pa. 350, 237 A. 2d 342 (1968); and see 8 Standard Pa. Pract. §11, page 397.

The parties stipulated that the Pennsylvania Liquor Control Board, between September 18, 1957, and November 22, 1971, cited defendants Peter P. D'Andrea and Ida E. D'Andrea, then licensees of restaurant liquor license no. R-18631, on three separate occasions as the result of a variety of violations of section 493 of the Liquor Code, including the sale of alcoholic beverages to visibly intoxicated persons, the sale of alcoholic beverages on Sunday, the sale of alcoholic beverages at unlawful hours, permitting gambling upon the licensed premises, permitting minors to frequent the licensed premises, and permitting female entertainers to contact and associate with patrons, all resulting in suspension of the license for a total of 55 days, and a fine in the sum of $250.

The parties further stipulated that defendant Giralamo P. D'Andrea, a member of the partnership known as Conestoga Farms Tavern, and presently one of the licensees upon restaurant liquor license no. R-18631, was bound over for action by a Chester County Grand Jury as the result of a criminal complaint charging him with permitting lewd, immoral or improper entertainment upon the licensed premises on November 29, 1973, November 30, 1973 and December 13, 1973.

Defendants assert three bases for the proposition that such citations and criminal charges may not here permit injunctive relief.

Defendants first argue that all citations by the Pennsylvania Liquor Control Board were against defendants Peter P. D'Andrea and Ida E. D'Andrea as licensees of restaurant liquor license no. R-18631, an entity entirely distinct from the present licensees, Peter P. D'Andrea, Ida E. D'Andrea and Giralamo P. D'Andrea, co-partners trading as Conestoga Farms Tavern. A similar argument was advanced unsuccessfully in Commonwealth v. John S. McCleary Republican Club, 43 Del. 208 (1956).

While it is true that the transfer in McCleary, supra, occurred at a time following the institution of the complaint but prior to hearing, and the transfer in the case at bar occurred some 16 months prior to the filing of the complaint, we believe, as did the court in McCleary, supra, that the distinction is unimportant. The transfer here, approved on October 31, 1972, merely added the name of the son of the original licensees to the license, and reflected the formation of a partnership among all three. There is no evidence in the record indicating any change in operation, and there is no indication that

the original licensees, Peter P. D'Andrea and Ida E. D'Andrea, were any less active following the transfer. As a practical matter, the only difference was that of name.

Nor are we persuaded that two licensees, in this case husband and wife, may seek and obtain insulation from the impact of section 611, or the Liquor Code generally, by the simple expedient of adding the name of their son to the license. For the purposes of this adjudication, therefore, we will consider all activities forming the basis of citations by the Pennsylvania Liquor Control Board as against the instant defendants.

Defendants next argue that no violations of the Liquor Code have been proved, inasmuch as citations by the Pennsylvania Liquor Control Board are merely evidence of the fact that such citations were issued, and are not proof in *this* tribunal of the occurrence of the activities apparently forming the basis of the citations. Defendants thusly argue that the Commonwealth, rather than merely introducing the citations, must, for example, independently prove that defendants sold alcoholic beverages to visibly intoxicated persons at the times set forth in the citations. We do not perceive such to be the law.

While administrative determinations are not binding upon the courts, such determinations are highly persuasive: Highway Express Lines v. Pennsylvania Public Utility Commission, 164 Pa. Superior Ct. 145, 63 A. 2d 461 (1949), particularly when made by administrative bodies having special competence to deal with the subject matter: Shipley v. Pittsburgh and L. E. R. Co., 83 F. Supp. 722 (1949); and see 1 P.L. Encyc., Administrative Law and Procedure, 308, §48.

Considering that, the burden is upon the Com-

monwealth to prove the allegations of its complaint by a mere preponderance of the evidence: Commonwealth v. Chassey's Tavern, Inc., 59 D. & C. 2d 262 (1973), the introduction of such citations should be sufficient to shift the burden to defendants. Inasmuch as defendants offered no evidence, we believe the Commonwealth has met its burden of proving violations of the Liquor Code.

Defendants finally argue that the acts alleged in the citations of the Pennsylvania Liquor Control Board are too remote in time to permit the injunction to issue.

The Liquor Code, in section 611, specifically provides that "[i]t shall not be necessary for the court to find the property involved was being unlawfully used . . . at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order . . ." The statute itself therefore contemplates that proof of prior conduct will suffice to permit the injunction to issue.

Nor does the Liquor Code indicate the number of violations necessary before the court may act. It may well be that a court would find it difficult to justify an order to padlock the instant premises upon proof of the citation issued in 1957 only. However, the record reveals at least the outline of a pattern of continuing unlawful operations, culminating in the charges now pending in the criminal division of this court.

And in Commonwealth v. Tick, Inc., 427 Pa. 120, 233 A. 2d 866 (1967), appeal after remand, 431 Pa. 420, 246 A. 2d 424 (1968), notwithstanding evidence reflecting an effort by the defendant to abate the nuisance, and evidence that no violations had occurred for many months prior to the hearing, the

Supreme Court of Pennsylvania directed that the premises be padlocked.

Defendants do not assert that the material allegations of those paragraphs of the complaint pertaining to violations of the Liquor Code are not true, nor that there was unreasonable delay in bringing suit. They argue only that such violations are too remote. In disposing of a similar argument, the Supreme Court of Pennsylvania, in Commonwealth v. Pendalli, 306 Pa. 186, 159 Atl. 168 (1932) held, at page 188:

"Under such circumstances, 'that the hearing is remote from the commission of the offense will not, at least in the absence of affirmative proof of abatement, prevent decree' " (citation omitted).

and on pages 188 and 189:

" 'A nuisance, once shown to exist, will be presumed to continue, especially in the absence of change of environment.' . . . Here, the proof of abatement does not measure up in quantum and quality with the proof of previous existence, as it should [Citation omitted]; there is, in fact, no actual proof of abatement, and the finding that the nuisance existed over a considerable period justified the presumption that it might be expected to continue, especially since all surrounding circumstances remain as theretofore."

We cannot say, therefore, that evidence of the violations here involved are remote in time in the context of section 611.

## CONCLUSION OF LAW

1. Premises known as Conestoga Farms Tavern, situate at Route 30 and Malin Road, East Whiteland

Township, Chester County, Pa., are now and have in the past been used, maintained, operated, conducted and kept so as to be a common nuisance, and unlawfully used, in violation of section 611 of the Liquor Code.

## DECREE NISI

And now, March 12, 1974, in accordance with the provisions of the Act of April 12, 1951, P.L. 90, art. VI, sec. 611, 47 P.S. §6-611, it is ordered, adjudged and decreed that premises known as Conestoga Farms Tavern, situate at Route 30 and Malin Road, East Whiteland Township, Chester County, Pa., be and the same are hereby declared a common nuisance, and in order to abate such nuisance, it is ordered, directed and decreed that all business therein shall forthwith cease and determine and the premises shall not be occupied or used for any purpose for a period of one year; and the prothonotary of Chester County is directed to give notice forthwith to the parties or their counsel of record of the filing of the within decree nisi, and if no exceptions be filed thereto within 20 days after the service of such notice, to enter the same as a final decree.

## OPINION SUR EXCEPTIONS

SUGERMAN, *J.*, December 2, 1974—Defendants have excepted to the adjudication heretofore filed by this court in the captioned matter on March 12, 1974. After argument before the court en banc and consideration of the briefs of counsel, we find no merit in the exceptions for the reasons advanced in the "Discussion" subdivision of the adjudication. The adjudication is reaffirmed hereby and the defendants' exceptions are dismissed.