## Commonwealth v. J-D 201 Corporation

*Edward G. Rendell, district attorney, John P. Delaney, George Rayborn, assistant district attorneys*, for the Commonwealth.
*Gary P. Heslin*, for defendants.

TAKIFF, *J.*, July 22, 1983—This complaint in equity was filed in May, 1983 by the Commonwealth

of Pennsylvania by Edward G. Rendell, District Attorney of Philadelphia County, pursuant to the provisions of the Act of April 12, 1951, P.L. 90 as amended, currently codified at 47 Pa.C.S. §1-101 et seq. (the "Liquor Code"), and pursuant to the claimed inherent powers of the district attorney under common law. Defendants are the J-D 201 Corporation, trading as the Olney Tavern, located at 201 W. Clarkson St., Philadelphia; and Andrew R. Miller and John J. Skahan are the sole stockholders of the corporation.

Pursuant to agreement of counsel at the time of hearing on preliminary injunction on June 30, 1983, the matter has been submitted as on final hearing.

Plaintiff alleges that since approximately 1978, and particularly after January, 1982, defendants, their agents, servants and employees, have operated the Olney Tavern in such a way that it has become a public nuisance. Plaintiff particularly alleges that defendants have violated and continue to violate various provisions of the Pennsylvania Liquor Code, and prays that the operation of the Olney Tavern be enjoined for a period of one year.

We have deferred ruling pending receipt of the respective parties' proposed findings of fact and conclusions of law, which were due on July 11, 1983 pursuant to a schedule agreed upon by counsel at the conclusion of hearing and closing argument. We have received plaintiff's proposed findings of fact and conclusions of law; having received neither defendant's proposed findings of fact and conclusions of law, nor any explanation for the failure to submit such requests up to this date, we delay no further and issue the following

## FINDINGS OF FACT

1. Plaintiff is the Commonwealth of Pennsylvania, by Edward G. Rendell, District Attorney of Philadelphia County, acting pursuant to the provisions of the Act of April 12, 1951, P.L. 90, as amended by 47 P.S. §1-101 et. seq., and pursuant to the inherent powers possessed by the district attorney under the common law.

2. Defendant J-D 201 Corporation, is a corporation existing under the laws of the Commonwealth of Pennsylvania, trading and doing business as Olney Tavern, a bar located at 201 Clarkson Street, Philadelphia, Pa.

3. The Olney Tavern is located in the Olney section of Philadelphia. The area around the tavern, Second and Clarkson Streets, is overwhelmingly residential, composed of well-kept twin and row houses occupied as single-family dwellings. The only commercial buildings in the immediate area are defendants' corner tavern and a corner grocery store across the street from the tavern.

4. Defendant J-D 201 Corporation, t/a Olney Tavern, holds Liquor License no. R-9494 issued by the Pennsylvania Liquor Control Board.

5. Defendants Andrew R. Miller and John J. Skahan are the sole shareholders of J-D 201 Corporation stock.

6. Defendants Andrew R. Miller and John J. Skahan have owned the Olney Tavern for approximately five years.

7. Since Andrew R. Miller and John J. Skahan have owned the Olney Tavern, the Pennsylvania Liquor Control Board has cited defendants on four occasions for violating the provisions of the Liquor Code.

8. In December, 1982, as a result of one of the citations issued to defendants by the Pennsylvania

Liquor Control Board, defendants' liquor license was suspended for a period of 10 days.

9. For about the last two years, and continuing to the present time, on numerous and diverse occasions, defendants, their servants, agents and/or employees have served alcoholic beverages to visibly intoxicated persons in violation of the Liquor Code.

10. For about the last two years, defendants, their servants, agents, and/or employees, have allowed the door to the tavern to remain open during business hours, have allowed patrons to loiter outside the tavern, and have allowed patrons to take open beer cans and glasses of beverage in and out of the tavern and loiter on the sidewalk and adjoining premises to drink from such containers.

11. The police officer assigned to work corner complaints in the police district which includes the Olney Tavern, Officer Craig Baker, has, in the last two years, received and responded to numerous complaints to go to the Olney Tavern to deal with problems caused by patrons of the tavern. Officer Baker has observed intoxicated persons inside and outside the tavern, minors inside the tavern, fights outside the tavern, patrons urinating outside the tavern and persons with open drinks in their possession going in and out of the tavern. Officer Baker has testified that the overwhelming majority of the complaints he received with respect to neighborhood incidents concern the Olney Tavern, which he has described as the worst bar in his district.

12. Approximately two years ago, Sara Pizarro and her husband purchased their home which is located across the street from the Olney Tavern. Since that time, as a result of the conduct of the patrons of the Olney Tavern, the Pizarro's have had beer bottles and cans thrown into their yard and, on

occasion, against their house, have had their garage struck numerous times by autos driven by persons leaving the tavern, have been subjected to vulgar language and offensive conduct, and have frequently been awakened late at night by loud noises coming from the immediate vicinity of the Olney Tavern. Further, the Pizarro's have been required to put up iron bars across the windows on the first floor of their house because of their fear that some projectile will be thrown through the window and strike their child; have had to put up a concrete slab near their garage to protect the garage; and have had to cease sitting out on their porch.

13. As a result of the conduct of patrons of the Olney Tavern, residents of the neighborhood are afraid to sit on their porches and/or backyards (testimony of Eleanor Herbert and Mary Sofia); are afraid that their children who play on the street will be hit by a car driven by an intoxicated person (testimony of Roberta Mellor); and are afraid that their parked cars will be hit by a car driven by an intoxicated person (testimony of Eleanor Herbert and Roberta Mellor). Intoxicated patrons of the bar have hit the parked cars of community residents.

14. As a result of the conduct of the patrons of the Olney Tavern, and the failure of defendants, their agents, servants and employees to control them, residents of the neighborhood are subjected to loud and obnoxious noises, originating both from within and outside the tavern at all times of the night, are subjected to obscene language, and, are subjected to persons urinating on their property.

15. On numerous occasions, residents of the community have observed defendants Andrew R. Miller and John J. Skahan to be intoxicated when coming out of the Olney Tavern.

## DISCUSSION

The Commonwealth proceeded under two distinct theories at trial; the district attorney's statutory authority conferred by 47 Pa.C.S. §6-611 (the Liquor Code), and his common-law authority to seek the abatement of a public nuisance.

47 Pa.C.S. §6-611 empowers the district attorney to sue in equity to enjoin any nuisance, as defined in subsection (a) of the act:

"Any room, house, building, boat, vehicle, structure or place, except a private home, where liquor, alcohol or malt or brewed beverages are manufactured, possessed, sold, transported, offered for sale, bartered or furnished, . . . in violation of this act, and all such liquids, beverages, and property kept or used in maintaining the same, are hereby declared to be common nuisances . . . " The Liquor Code specifically prohibits certain acts relative to the sale, transportation, and possession of alcohol, liquor, and malt or brewed beverages. 47 Pa.C.S. §§4-491-493. Sale of liquor or malt or brewed beverages to any person who is visibly intoxicated is one of the prohibited acts.[1]

The Supreme Court of Pennsylvania has found the Liquor Code to be a constitutional exercise of the Commonwealth's police power, "in a field where, without adequate safeguard and control, abuse may jeopardize the public health, safety, and morals." Commonwealth v. Cochran Post no. 251, 350 Pa. 111, 113, 38 A.2d 250, 252 (1944). In Cochran, the court found that an equity action

---

1. Defendants admitted in their answer to the complaint in equity that they have been cited by the Liquor Control Board on four occasions since 1979. In addition, plaintiff's witnesses testified to observing persons visibly intoxicated leave and re-enter the premises of the Olney Tavern.

maintained by the district attorney of Philadelphia pursuant to the statutory predecessor of 47 Pa.C.S. §6-611[2] did not work an unconstitutional deprivation of property because:

"[F]irst . . . a liquor license is not property but a privilege only . . . [second], the respondents, who are responsible for the maintenance of the nuisance, can hardly be permitted to seek shelter behind a cloak of immunity cut from the instruments whereby they commit the nuisance." Id. at 119, 38 A.2d 250, 252.

Moreover, the district attorney has common-law power to seek injunctive relief against a public nuisance. In Duggan v. Guild Theater, Inc., 436 Pa. 191, 258 A.2d 858 (1969), the Pennsylvania Supreme Court held that a district attorney had standing to seek prohibition of the showing of an obscene movie. Although the court found no specific statutory basis for the district attorney's authority, it stated: "that does not mean he lacks standing . . . for we cannot say that the legislature was required to statutorily create standing . . . to enable him to protect the public from a recognized evil." Id. at 195, 258 A.2d at 860.

Courts of this Commonwealth have consistently recognized the district attorney's common-law powers vis-a-vis liquor licensed establishments. See, e.g., Commonwealth v. D'Andrea, 71 D.&C.2d 770 (1974); Commonwealth v. Graver, 461 Pa. 131, 334 A.2d 667 (1975); Commonwealth v. Tick, 427 Pa. 120, 233 A.2d 866 (1967) and 431 Pa. 420, 246 A.2d 424 (1968).

Defendants have argued at the conclusion of the trial that since the acts of the tavern's patrons con-

---

2. 47 Pa.C.S. §744-608, containing language virtually identical to §6-611.

stitute alleged violations of the criminal law, the court should refuse to enjoin the operation of the tavern and direct the district attorney to proceed in that arena. Defendants further maintain that residents of the neighborhood around the tavern must seek their relief from the police department. While it is beyond cavil that an action will not be enjoined simply because it is criminal, neither will the fact that an act is criminal preclude its being enjoined. Pa. Soc. P. of C. to A. v. Bravo Enterprises, 428 Pa. 350, 357, 237 A.2d 342 (1968). Moreover, 347 Pa.C.S. §6-611 expressly provides that the district attorney may choose either to prosecute for violations of the crime code[3] or to proceed in a civil action to enjoin those who, like defendants here, violate the provisions of the Liquor Code. In Cochran, supra, the Supreme Court noted, "since the [Liquor Code] contains a provision for its enforcement by injunction, the fact that a violation thereof also constitutes a misdemeanor is of no moment." Id. at 116, 38 A.2d 253. The Cochran court emphasized the different objectives sought to be attained by the criminal law and equity: punishment of the offender in the former; immediate relief against a public menace in the latter. Id. See also Commonwealth ex rel. v. Soboleski, 303 Pa. 53, 158 Atl. 898 (1931) (fact that defendant's operation of a piggery was a crime did not prevent issuance of injunction).

We conclude that a liquor licensee such as the Olney Tavern, which is maintained as a public nuisance, is accountable for its actions in equity at the Commonwealth's behest. Moreover, equitable relief would be appropriate even if the nuisance did not

---

3. Section 6-611(a) provides, in pertinent part, ". . . any person who maintains such a common nuisance shall be guilty of a misdemeanor . . ."

violate any provisions of the Liquor Code. See Reid v. Brodsky, 397 Pa. 463, 156 A.2d 334 (1950). Neither the appellate courts nor the legislature of this Commonwealth intended that a licensee should be immunized from liability for offensive conduct through technical compliance with the Liquor Code. The acts complained of, while often times committed by patrons of the tavern off the tavern's premises, were all directly and immediately related to the operation of defendants' tavern. As plaintiff's witnesses testified, with total credibility, visibly intoxicated patrons entered and exited the tavern at will. We find the situation created by the operation of the Olney Tavern here to parallel the circumstances so cogently described by Justice Jones in Reid v. Brodsky, supra, at 471, and quoted with approval in Commonwealth v. Graver, 461 Pa. 131, 334, 334 A.2d 667, 670 (1975):

"Until the establishment of this restaurant in the area such offensive public conduct was unknown; it was the establishment of the business within this area which attracted these persons whose conduct so mortified and disgusted the residents of this neighborhood. The factor which introduced this conduct into the area was the establishment of this taproom-business with its attraction for undesirables from other areas; assuming arguendo, that appellants could not control the conduct of their patrons outside the premises, is that any excuse for the continuance in business of this establishment whose existence is solely and primarily responsible for the attraction of those persons into this neighborhood whose conduct so offends the morals of the property owners situated therein? Assuming that appellants could not control the conduct of their patrons, is this business which brings into the area by way of attraction those persons whose conduct is

reprehensible to be permitted to be operated simply because it has been given an aura of respectability and legality by the issuance of a liquor license? The conduct which has disturbed the peace and quiet of this residential area and affronted the sensibilities of appellees endeavoring to maintain in this urban area a decent, clean and wholesome environment in which to live and rear their families directly resulted from the operation of this taproom-restaurant. The only practical manner in which this area can be protected from this unwholesome conduct is through a cessation of the operation of this business."

Defendants have suggested that the Commonwealth, through the district attorney, may not proceed under two theories but must choose to proceed either under the Liquor Code or the common law. This suggestion is contrary to the law of this Commonwealth. See, Commonwealth v. Graver, 461 Pa. at 137, 334 A.2d at 670; Commonwealth v. Tick, Inc., 427 Pa. 120, 124, 233 A.2d 866, 868 (1967).

Reviewing the credible evidence adduced at trial, we find that plaintiff presented competent testimonial evidence which unequivocally established that defendants' operation of the Olney Tavern has resulted in a continuing substantial injury and detriment to the quality of life in the immediately surrounding community. Resident after resident testified to the continual disturbance and annoyance of loud and obnoxious noise emanating from the premises and the surrounding sidewalks, frequent urination and littering on their property, and their subjection to obscene and vulgar language, all of which offenses were perpetrated by patrons of the Olney Tavern. Based on repeated incidents, residents have testified to their continuing fear of having projectiles thrown through their windows and of having their children, their cars and/or their houses

struck by cars driven by intoxicated patrons of the tavern. Neither the arrest of offending individuals by the police nor the issuance of previous citations by the Liquor Control Board in the past five years have relieved the serious disturbance to the community caused by the operation of the Olney Tavern. The evidence that plaintiff adduced at trial was more than sufficient to establish that the operation of the Olney Tavern does indeed constitute a nuisance and should be enjoined.

Contrariwise, we find the testimony of defendants' witnesses to be lacking in credibility and unpersuasive of their contention that the Olney Tavern was operated in a lawful, proper and orderly manner, without prejudice or harm to the persons or property of the neighbors.

In the words of the conclusion reached by the court in Com. v. Graver, 461 Pa. at 137, 334 A.2d at 670, we also conclude that:

"In our judgment the voluminous testimony in this case of increasing abhorrent conduct by patrons in a once peaceful neighborhood, coupled with the admitted Liquor Code violations, amply support the issuance of the injunction." It is our view that only an injunction against the operation of the Olney Tavern for a period of one year will enable the residents of the area to once again enjoy the peaceful character of their neighborhood.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over plaintiff's cause of action under 47 P.C.S. §6-611 which provides an appropriate basis for an action in equity to enjoin the operation of a tavern which constitutes a nuisance. Commonwealth v. Graver, 461 Pa. 131,

334 A.2d 667 (1975), and Commonwealth v. Chassey's Tavern, Inc., 59 D.&C.2d 262 (1973).

2. Defendants, who hold a license issued by the Pennsylvania Liquor Control Board, are subject to the provisions of the Liquor Code, including section 6-611. Commonwealth v. Cochran Post No. 251, 350 Pa. 111, 38 A.2d 250 (1944).

3. Defendants have been cited by the Liquor Control Board on four occasions (December, 1979, January, 1981, June, 1981, and December, 1982) and, on occasion, suspended for violating the provisions of the Liquor Code, which citations and suspension were never challenged.

4. Defendants have violated section 493.1 of the Liquor Code by serving alcoholic beverages to visibly intoxicated persons. This practice is on-going and has continued up to the time of the hearing held in this matter.

5. Plaintiff has proven by a preponderance of clear and positive evidence, that defendants have violated various provisions of the Liquor Code in the operation of the Olney Tavern. See Commonwealth v. D'Andrea, 71 D.&C.2d 770 (1974).

6. This court also has jurisdiction over plaintiff's cause of action in that the operation of defendants' tavern constitutes a public nuisance under the common law. Reid v. Brodsky, 397 Pa. 463, 156 A.2d 334 (1950); Commonwealth v. Graver, supra.

7. Plaintiff has proven by a preponderance of the clear and positive evidence, that patrons entered and left the tavern in visibly intoxicated conditions, that loud and obnoxious noise (both from the patrons and the tavern itself) pervaded the neighborhood, particularly late at night, that persons departing from the tavern urinated on the adjacent public streets and on the property of the adjoining residents, that obscene, vulgar and profane language

was used by patrons of the tavern in the presence of residents, and that patrons departing the tavern in an intoxicated condition drove their cars in such a manner that the residents were fearful of being hit.

8. Plaintiff has proven by clear and positive evidence that the conduct of the patrons has had a serious adverse affect on the neighorhood. Cf., Reid v. Brodsky, supra.

9. Defendants' have violated the provisions of the Liquor Code in the operation of their tavern on numerous occasions, including four occasions when the Liquor Control Board imposed sanctions on them, and have allowed patrons of the tavern to conduct themselves in such a manner in and out of the tavern so that their conduct has become a public nuisance. Plaintiff is entitled to the issuance of an injunction. Commonwealth v. Graver, supra., and Reid v. Brodsky, supra.

10. The situation which defendants have created can be effectively remedied presently only by enjoining defendants from operating their tavern for a period of one year. See Commonwealth v. Tick, 427 Pa. 120, 233 A.2d 866 (1967); 47 Pa.C.S. §6-611.

## DECREE NISI

And now, this July 22, 1983, after consideration of the pleadings filed and hearing held, it is hereby ordered and decreed that

(1) Plaintiff's petition for a permanent injunction is granted. Defendants, their agents, servants, and/or employees are enjoined from operating, or permitting the operation of, the premises at 201 West Clarkson Street, Philadelphia, Pa., as a liquor-licensed establishment for one year from the date hereof and from transferring their liquor license for one year from the date hereof.

(2) The prothonotary is directed to enter this decree nisi and, unless appropriate exceptions are filed by either party within 10 days from the date of notice of this order, to enter this adjudication and order as the final decree.