513 A.2d 1066

**COMMONWEALTH of Pennsylvania ex rel. J. Christian NESS, District Attorney of York County Pennsylvania**

**v.**

**KEYSTONE SIGN, CO., INC. t/a/Triangle Tavern, Steven H. Schiding, Dionysios Tomboris, William Benson Fry and Marie L. Fry, His Wife.**

**Appeal of KEYSTONE SIGN CO., INC. t.a. Triangle Tavern and Dionysios Tomboris.**

Superior Court of Pennsylvania.

Submitted March 3, 1986.

Filed Aug. 18, 1986.

William C. Kollas, Lemoyne, for appellant.

J. Christian Ness, Assistant District Attorney, York, for Commonwealth, appellee.

Before WICKERSHAM, WATKINS and CERCONE, JJ.

WATKINS, Senior Judge:

This case comes to us on appeal from the Court of Common Pleas of York County and involves defendant-appellant's appeal from an order of the court below which granted the district attorney's request for an injunction pursuant to Section 6–611 of the Liquor Code, *47 Pa.C.S.A. 6–611.* The court below ordered the appellant's licensed liquor establishment closed for a period of one year because it found the establishment to be a nuisance.

█ The York County District Attorney brought an equity action against defendant pursuant to Section 6–611 of the Liquor Code. Part (a) of that section provides as follows:

"Any room, house, building, boat, vehicle, structure or place, except a private home, where liquor, alcohol, or malt or brewed beverages are manufactured, possessed, sold, transported, offered for sale, bartered or furnished, or stored in bond, or stored for hire, in violations of this act, and all such liquids, beverages and property kept or used in maintaining the same, are hereby declared to be common nuisances, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and, upon conviction thereof, shall be subject to the same penalties provided in section four hundred ninety four of this act."

Defendant argues that said section does not apply to licensed establishments. He contends that the words "in violation of this Act" exclude licensed premises from inclusion in those establishments to which this Act applies citing several rules of statutory construction and the legislative history of the section which he maintains was meant to outlaw speakeasies. The Commonwealth cites Section 1–104(a) of the Liquor Code which states:

"This act shall be deemed an exercise of the police power of the commonwealth for the protection of the public welfare, health, peace, and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

The Commonwealth argues that the phase "in violation of this Act" is not confined to those acting without a license, but is intended to encompass any violation under the Liquor Code.

No appellate court cases are cited which decide whether Section 6–611 of the liquor Code applies only to non-licensees or whether it applies to nuisances created by either licensees or non-licensees so long as some violation of the Liquor Code is proven. There are, however, several lower court cases which provide guidance on this issue.

In *Commonwealth v. Chassey's Tavern*, 59 D. & C.2d 262 (1973), the District Attorney of Philadelphia filed a complaint in equity under the Liquor Code of 1951, Section 6–611 seeking to enjoin the operation of a bar alleging that the operation constituted a nuisance. The Defendants in that case contended that Section 6–611 of the Liquor Code did not apply to licensees of the Liquor Control Board. Defendants based their conclusion on the origins of the Code during the era of prohibition and argued that the subsequent history of the section compelled that interpretation. The Court therein found that Section 6–611 does in fact provide an additional enforcement method supplementing the citation and revocation of license procedures accorded to the Pennsylvania Liquor Control Board. The Court therein stated that:

"The power accorded to the Pennsylvania Liquor control Board by the legislature is to control the manufacture, sale, consumption, use and storage of liquor in the commonwealth, but it is not the exclusive agency vested with investigative and prosecutorial authority over Liquor Code violations. The legislature has given specific authority to deal with certain phases of liquor activity to the Attorney General and to the district attorney of the county in which the activity takes place by enacting § 6–611 of the code. There is nothing in this section of the code or in the history of its enactment which limits its applicability to non-licensees. Moreover, the code itself, 47 PS § 1–104(a), requires a liberal construction of its

terms, thereby preventing this court from giving § 6–611 of the code the narrow application suggested by defendants."

We agree with the Commonwealth's contention on this issue.

■ Next appellant contends that the lower court erred when it considered violations of the crimes code which occurred off the licensed premises in determining that appellant's establishment was a nuisance.

At a hearing held on September 15, 1985, testimony was presented which showed that patrons of the bar engaged in conduct such as urinating on the street and on the property of neighbors, drinking outside of the tavern, throwing empty beer bottles on the street or on to a neighbor's property, loud and boisterous conduct including loud conversation, yelling, arguing, and fighting, as well as, generating loud noises from vehicles especially motorcycles. This conduct would go on all evening as late as 3:30 A.M. to 4:00 A.M. It interfered with the neighbors in the area and disturbed the peace and quiet of the neighborhood. Police reports indicated that activity of this nature occurred "practically every night late in the morning hours" and that there was all kinds of fighting, noises, and profanity. The evidence also demonstrated that beer was sold on at least one occasion to a minor by an employee of appellant, albeit without appellant's permission since the employee was a caretaker and not authorized to tend bar. Nevertheless, this incident constituted a violation of the liquor code by the caretaker and the violation occurred on appellant's premises.

Appellant argues that he cannot be held responsible for conduct of patrons of the bar (or former patrons as he puts it arguing that once they leave the establishment they are no longer patrons) when they are off the premises. This very contention was addressed in *Reid v. Brodsky,* 397 Pa. 463, 156 A.2d 334 (1959) wherein our Supreme Court stated as follows:

"Appellants argue that most, if not all, of the offensive conduct took place not *within, but without,* the restau-

rant premises and for such conduct appellants should not be held responsible. Until the establishment of this restaurant in the area such offensive public conduct was unknown; it was the establishment of the business within this area which attracted those persons whose conduct so mortified and disgusted the residents of this neighborhood. The factor which introduced this conduct into the area was the establishment of this taproom-business with its attraction for undesirables from other areas; assuming arguendo, that appellants could not control the conduct of their patrons outside the premises, is that any excuse for the continuance in business of this establishment whose existence is solely and primarily responsible for the attraction of those persons into this neighborhood whose conduct so offends the morals of the property owners situated therein? Assuming that appellants could not control the conduct of their patrons, is this business which brings into the area by way of attraction those persons whose conduct is reprehensible to be permitted to be operated simply because it has been given an aura of respectability and legality by the issuance of a liquor license? The conduct which has disturbed the peace and quiet of this residential area and affronted the sensibilities of appellees endeavoring to maintain in this urban area a decent, clean and wholesome environment in which to live and rear their families directly resulted from the operation of this taproom-restaurant. The only practical manner in which this are can be protected from this unwholesome conduct is through a cessation of the operation of this business."

In *Reid* individual residents of a neighborhood initiated an action on their own seeking to enjoin a nuisance created by a local licensed liquor establishment. Appellant seeks to distinguish *Reid* from the instant case because our action was initiated by the district attorney and not by individual residents. However, *Reid* stands for the proposition that in determining whether an establishment constitutes a nuisance, the court can consider conduct of the establishment's

patrons which occurs off the premises so long as that conduct occurs in the immediate vicinity of the establishment.

We agree with the proposition that a tavern owner cannot be held responsible for each and every act engaged in by a patron of his establishment, especially when the conduct is committed off the premises. Nor can an isolated incident or even several incidents such as those described in the testimony of this case constitute a nuisance. However, when the evidence demonstrates a persistent and continuous disturbing of the peace and good order of the neighborhood as was shown in the instant case then it is within the power of the court to find that a nuisance exists and to take steps to enjoin that nuisance. In *Commonwealth v. Tick*, 427 Pa. 120, 233 A.2d 866 (1967). The district attorney of Philadelphia County filed an equity action to enjoin the operation of a licensed establishment pursuant to Section 6–611 of the Liquor Code. In its per curiam opinion the Supreme Court stated:

"Although the Appellees argue strenuously that they cannot be held liable for what occurred outside their premises, the evidence is clear and, indeed, so found by the trial court, that there was a causal relationship between the deplorable situation outside the premises and what went on inside the Wheel Bar."

In *Tick* the issue was whether the lower court erred by merely ordering that the nuisance be enjoined and not ordering the premises closed. The court's majority held that the court below was correct in finding that a nuisance existed but erred when it failed to order the tavern closed. The dissenting justices argued that the lower court had the discretion to enter either type of order. The question as to whether Section 6–611 of the liquor Code could be applied to licensed establishments does not appear to have been an issue. We note that *Tick* demonstrates that such actions have been maintained successfully by district attorneys of the Commonwealth.

As in *Tick* there was clearly a causal relationship between the situation outside the premises and what went on inside in our case. Finally, in *Commonwealth v. Graver*, 461 Pa. 131, 334 A.2d 667 (1975), where the Lancaster County District Attorney initiated an equity action to enjoin the operation of a tavern as a nuisance under Section 6–611 of the Liquor Code, the Supreme Court said:

> "Moreover, testimony concerning conduct by bar patrons in the area of the bar who are attracted to the area by the manner of operation of the bar is competent evidence to support an injunction as a nuisance in law and in fact ... The voluminous testimony in this case of increasing abhorrent conduct by patrons in a once peaceful neighborhood, coupled with the admitted Liquor Code violations amply support the issuance of the injunction."

In the instant case the testimony also demonstrated the existence of increasing abhorrent conduct by patrons of a tavern in a once peaceful neighborhood and this was coupled with at least one Liquor Code violation i.e. the serving of a minor by the caretaker. We find that the court below acted correctly when it admitted the evidence that it did and that it had the discretion to enter the order that it did.

Order affirmed.