334 A.2d 667

**COMMONWEALTH of Pennsylvania**

v.

**Donald C. GRAVER, Appellant, et al.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1973.

Decided March 18, 1975.

132

Daniel H. Shertzer, Lancaster, for appellant.

Andrew F. Lucarelli, Lancaster, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-ERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

NIX, Justice.

Appellant is an owner of "Graver's Bar" situated in Lancaster, Pennsylvania. Appellee, the Commonwealth of Pennsylvania, (by the District Attorney of Lancaster

County) sought to enjoin the operation of appellant's bar as a nuisance under § 611 of the Liquor Code, Act of April 12, 1951, P.L. 90, art. VI, 47 P.S. § 6–611 (1969). An ex parte injunction was granted on the date the complaint was filed. Following a hearing the trial court ruled that the injunction be continued. This appeal was taken from that decree.

Appellant raises two contentions in support of this appeal. First, he alleges that the evidence presented was insufficient to support the decree continuing the preliminary injunction; and second, that the trial court erred in permitting the admission of certain testimony under the Uniform Business Records as Evidence Act, Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b (1958).

The Commonwealth, in support of its request for injunctive relief under § 611 of the Liquor Code, averred that numerous violations of the Liquor Code had occurred in the period of months immediately preceding the filing of the complaint. Section 611 provides in pertinent part: "Any room, house, building . . . where liquor . . . [is] sold . . . in violation of this act . . . are hereby declared to be common nuisances . . . (b) An action to enjoin any nuisance defined in this act may be brought in the name of the Commonwealth . . . by the Attorney General or by the district attorney of the proper county."

At the hearing, the Commonwealth introduced testimony of the custodian of police records who read from daily police logs listing the date, time, and names of policemen dispatched to the area of the bar, their observations upon arriving, and the action taken, if any. The Commonwealth also introduced evidence through testimony by an investigating officer of the Liquor Control Board of incidents of sales to visibly intoxicated persons and dancing on the premises without securing the required permit; and testimony of residents living in the neighborhood of

the bar as to sales to minors and Sunday sales all in violation of the Liquor Code.[1]

Residents of the neighborhood testified extensively to the deteriorating condition of the area immediately surrounding the bar due to the unruly behavior of patrons of the bar. Included in this testimony were incidents where patrons engaged in loud, boisterous, and violent conduct, urinated and littered on property of residents living adjacent to or near the bar, directed abusive and obscene language toward the people of the neighborhood and, in one instance, physically attacked a resident. Testimony also revealed that many residents were undergoing severe emotional strain due to the manner of the operation of this business establishment.

In reviewing the action of the court below granting a preliminary injunction we must be mindful of the following rules of law. As we stated in *Credit Alliance Corp. v. Phila. Minit-Man Car Wash Corp.*, 450 Pa. 367, 301 A.2d 816 (1973):

> "It has long been the rule in this Court that on an appeal from a decree, whether granting or denying a preliminary injunction, we will not inquire into the merits of the controversy, but will, instead, examine the record only to determine if there were any apparently reasonable grounds for the actions of the court below . . . Moreover, we will not 'pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly not applicable.'
>
> . . .
>
> Secondly, it is settled law that the granting of a preliminary injunction is a harsh remedy and should only be issued when the essential prerequisites are met. As

---

1. See Sections 493(1) (sales to visibly intoxicated persons and sales to minors), 493(10) (dancing), 492(5) (Sunday sales), Act of April 12, 1951, P.L. 90, art. IV, as amended, 47 P.S. § 4–493(1), 4–493(10), 4–492(5).

we said in *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 181, 207 A.2d 768, 770 (1965): '. . . the essential prerequisites for the issuance of a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct.' " Id. at 370–71, 301 A.2d at 818.

Appellant urges that the personal observations by witnesses of activities of people outside the bar cannot form a basis for the issuance of the injunction. Appellant postulates that since the bar has been in existence for eleven years and the activities have been occurring for a considerable period of time, these facts necessarily negate the existence of "immediate harm." Additionally, he contends that the decree reversed, rather than preserved the status quo and disputes the claim that continued operation would likely result in substantial injury.

Appellant's arguments ignore prior statements by this Court, in factually similar cases, wherein we have held that where "the evidence is clear and, indeed, so found by the Trial Court, that there was a causal relationship between the deplorable situation outside the premises and what went on inside the . . . [b]ar" it is an abuse of discretion not to grant the injunction, *Commonwealth v. Tick, Inc.*, 427 Pa. 120, 125, 233 A.2d 866, 868 (1967). Moreover, testimony concerning conduct by bar patrons in the area of the bar who are attracted to the area by the manner of operation of the bar is competent evidence to support an injunction as a nuisance in law and in fact, *Reid v. Brodsky*, 397 Pa. 463, 156 A.2d 334 (1959). We said in *Reid*:

"Until the establishment of this restaurant in the area such offensive public conduct was unknown; it was the establishment of the business within this area

which attracted those persons whose conduct so mortified and disgusted the residents of this neighborhood. The factor which introduced this conduct into the area was the establishment of this taproom-business with its attraction for undesirables from other areas; assuming *arguendo,* that appellants could not control the conduct of their patrons outside the premises, is that any excuse for the continuance in business of this establishment whose existence is solely and primarily responsible for the attraction of those persons into this neighborhood whose conduct so offends the morals of the property owner situated therein? Assuming that appellants could not control the conduct of their patrons, is this business which brings into the area by way of attraction those persons whose conduct is reprehensible to be permitted to be operated simply because it has been given an aura of respectability and legality by the issuance of a liquor license? The conduct which has disturbed the peace and quiet of this residential area and affronted the sensibilities of appellees endeavoring to maintain in this urban area a decent, clean and wholesome environment in which to live and rear their families directly resulted from the operation of this taproom-restaurant. The only practical manner in which this area can be protected from this unwholesome conduct is through a cessation of the operation of this business.

Other jurisdictions presented with similar problems, have reached almost identical results". *Id.* at 471, 156 A.2d at 339.

■ We are not impressed with the argument that the fact that the business establishment has been in operation for a period of approximately eleven years negates the presence of immediate harm. To the contrary the evidence indicates that this business was not formerly conducted in this manner. The present complaints have been occasioned by a deterioration in the operation which

has changed a law-abiding business establishment into one that is offensive to the sensitivities of the community. Further, the granting of the injunction did in fact preserve the status quo in that it restrained the alleged reprehensible and offensive conduct which understandably mortified and disgusted the residents and threatened to destroy the neighborhood.

In our judgment the voluminous testimony in this case of increasing adhorrent conduct by patrons in a once peaceful neighborhood, coupled with the admitted Liquor Code violations amply support the issuance of the injunction.

Appellant attempts to mitigate the testimony presented against the establishment by suggesting that it was in large measure caused by a change in the racial complexion of the neighborhood. We, however, fail to perceive how such change could in any way influence the standard of conduct expected of law abiding citizens in this community or justify a pattern of criminal behavior in the operation of the establishment.

Appellant also contests the admission into evidence of testimony by the custodian of police records who testified from daily police logs concerning police calls to the vicinity of the bar. Appellant claims that this testimony did not satisfy the Uniform Business Records as Evidence Act.[2] In *Haas v. Kasnot,* 371 Pa. 580, 92 A.2d 171 (1952), cited by appellant in support of his position, this Court, commenting upon the Act, quoted *Freedman v. Mutual Life Insurance Company of New York,* 342 Pa. 404, 414, 21 A.2d 81, 86 as follows: ". . . the Act

2. That Act reads: "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b (1958).

did not intend to make relevant that which is not relevant, nor to make all business and professional records competent evidence regardless of by whom, in what manner, and for what purpose they were compiled, or offered." The Court in *Haas* continued: "The Statute itself conditions the admissibility of such a record upon the court's being of the opinion that the sources of information, method and time of preparation were such as to justify its admission." 371 Pa. at 586, 92 A.2d at 174. In *Henderson v. Zubik*, 390 Pa. 521, 136 A.2d 124 (1957), the Court concluded that: "From the foregoing Act, it is clear that the legislature intended to grant to the trial court discretionary power as to the admissibility of business records, provided, that they meet the standards set forth in the Act, and are otherwise admissible as evidence . . . ." *Id.* at 524, 136 A.2d at 126.

Appellant contends that the trial judge abused his discretion when he permitted testimony by the custodian specifically because the custodian did not know (1) who made the record, (2) when it was made, (3) what information the maker of the record had, (4) where the maker got such information, (5) the circumstances under which the record was made, and (6) whether it was an original record. We disagree with this contention and find no abuse of discretion.

■ Although petitioner is correct in that the custodian did not know precisely who placed the entries into the permanent logs from which he testified, there is no requirement that he have such knowledge. As to the lack of identity of the officer who entered the report into the log Professor McCormick states in his Handbook of the Law of Evidence (2d ed. 1972) as follows:

"The complex nature of modern business is such that all participants in the preparation of a record can most often not be identified or, if they can be pinpointed, could not reasonably be expected to have any help-

ful recollection concerning the specific transactions at issue. . . .

It is likely that today few if any courts would enforce the old requirement that all participants be produced or their unavailability established. At most, they would recognize a discretionary power in the trial judge either to enforce the traditional requirement or, in his discretion, to permit the offered record to be verified by a supervising officer who can testify that the records have been regularly kept. This discretionary power to dispense with the production of entrants and informants should be exercised when it appears that the inconvenience of producing the participants, in light of their number and probable lack of present knowledge, outweighs the value of producing them for examination and cross examination." (Footnotes omitted) § 312, p. 729–30.

■ Here the custodian was qualified as a keeper of the records and testified that these records were made in the regular course of business and were made each day from that day's police reports. In light of the difficulty in producing each police officer involved and their probable lack of present recollection, the trial judge properly exercised his discretion in dispensing with production of the "entrants and informants" in this case.

Appellant is simply incorrect in his contention that the custodian did not know what information the maker had, where he got such information and the circumstances under which it was made. Indeed the custodian testified from the logs which recorded the sources of the information, what those sources knew and what action they took, and that the log was compiled each day from daily police reports. *Compare, Sanders Appeal,* 454 Pa. 350, 312 A. 2d 414 (1973); *Jones Appeal,* 449 Pa. 543, 297 A.2d 117 (1972).

■ As to appellant's sixth contention, the custodian testified that he was reading from a permanent log taken

from the daily reports. Such testimony is permissible and is justified by Professor McCormick as follows:

"In business practice . . . it is customary for daily transactions such as sales or services rendered to be noted upon slips, memorandum books or the like by the person most directly concerned, and for someone else to collect these memoranda and from them make entries into a permanent ledger. In these cases, the entries in the permanent record sufficiently comply with the requirement of originality." McCormick, *supra*, § 307, p. 721.

In view of the foregoing we find no error here.

Decree affirmed. Costs to be borne by appellant.

EAGEN and ROBERTS, JJ., concur in the result.

MANDERINO, J., filed a concurring opinion.

MANDERINO, Justice.

The majority concludes that "the voluminous testimony in this case of increasing abhorrent conduct by persons in a once peaceful neighborhood, coupled with the admitted Liquor Code violations amply support the issuance of the injunction." While I agree that the issuance of the preliminary injunction may be sustained on the basis of proven Liquor Code violations, I disagree with the majority's alternative theory that the injunction, in this case, is also supported by the evidence of the conduct of appellant's patrons outside or in the vicinity of the bar. This case, unlike *Reid v. Brodsky*, 397 Pa. 463, 156 A.2d 334 (1959), was not instituted by a group of private citizens seeking to establish appellant's bar as a public nuisance. Rather, it was brought by the District Attorney of Lancaster County pursuant to a limited grant of authority contained in Section 6-611 of the Liquor Code, Act of April 12, 1951, P.L. 90, art. VI, 47 P.S.

§ 6–611 (1969). Section 6–611(a) clearly defines a nuisance capable of being enjoined by providing that:

"Any room, house, building, boat, vehicle, structure or place, except a private home, where liquor, alcohol or malt or brewed beverages are manufactured, possessed, sold, transported, offered for sale, bartered or furnished, or stored in bond, or stored for hire, in violation of this act, and all such liquids, beverages and property kept or used in maintaining the same, are hereby declared to be common nuisances."

Thus, in a suit instituted pursuant to section 6–611 the sole issue for determination is whether there have been violations of the Liquor Code. Testimony and evidence presented to show in what manner patrons conducted themselves other than on the subject premises is irrelevant and inadmissible.

In the present case appellant admits that the testimony of a Liquor Control Board investigator established that violations of the Liquor Code had occurred on appellant's premises several months before this action was filed. This admission, which is supported by the record, is alone sufficient to sustain the issuance of the injunction.

Furthermore, I disagree with the majority's conclusion that the testimony of a police officer who testified from daily police logs concerning police calls to the vicinity of the bar was admissible. First, for the reasons stated above, if such testimony was offered to prove the conduct of patrons in the neighborhood, it was irrelevant to the sole issue presented. Second, if the testimony was offered to prove violations of the Liquor Code, its admission would violate appellant's constitutional right to confront his accusers. As Justice Eagen noted in his dissenting opinion in *Commonwealth v. Tick, Inc.*, 427 Pa. 120, 125, 233 A.2d 866, 868 (1967), suits instituted pursuant to section 6–611 are indistinguishable from criminal prosecutions because in each case a substantial sentence or punishment may be inflicted for a violation of

the law. We would not allow a conviction for any crime —murder, burglary, rape, possession of narcotic drugs —to stand if the only evidence against the defendant were uncorroborated statements contained in a police log. In the present case the contents of the police logs were read into the record by a police officer who was neither the entrant nor the custodian. While the identity of the entrants appeared beside each entry, appellant was denied the opportunity to have them brought into court and defend their accusations. The Uniform Business Records as Evidence Act was never intended to accomplish such an unconstitutional result.

Thirdly, even assuming the testimony was relevant and even assuming their admission did not deprive appellant of his constitutional rights, the record does not support the conclusion that such evidence satisfied the necessary qualifications set forth in the Act. The Act provides:

"A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b.

The qualification testimony of the police witness, in its entirety, is as follows:

[DISTRICT ATTORNEY]:

Q. Sergeant Bitts, you have been reading from the daily report of various officers. Would you explain how that is made and what that means?

A. Yes. Each call that our men are sent on, the desk sergeant logs on a daily report. These calls were taken from those daily reports.

[DISTRICT ATTORNEY]: Cross examine.

## CROSS EXAMINATION

[DEFENSE COUNSEL]:

Q. Officer, is this the last page you read from?

A. Yes, it is.

Q. And that contains calls from 1966, 1967 to 1968; is that correct?

A. Yes.

Q. Is that all of the calls that were made in that period from that area?

A. You mean, is this all the calls that the police were sent on?

Q. Received, that's right?

A. No.

Q. It isn't.

Was that paper that you have in front of you and from which you have been reading made in 1966—begun in 1966?

A. I don't know.

Q. You don't know.

You didn't make this?

A. No, I didn't.

Q. Where did you get this paper that you have been reading from?

A. I got it from the records section.

Q. Who handed it to you?

A. No one handed it to me. It's in the folder in the records section.

Q. You went to a folder in the records section and you got this out and you don't know who made this?

A. No, I don't.

Q. You don't know when it was made?

A. No, I don't.

Q. You don't know what information the person who made it had when he made it, did you?

A. No, I don't.

Q. You don't know where he got the information that he has in there?

A. No, I don't.

Q. In fact, the only thing that you know about that paper that you have been reading from for half and [sic] hour is that you found it in the police station; is that not correct?

A. It is kept in the records section, yes.

Q. You went there and you dug it out and that's all you know about it?

A. Right.

[DEFENSE COUNSEL]: That's all.

If the Court please, I move to strike all of the officer's testimony.

THE COURT: Motion denied. Motion denied.

[DEFENSE COUNSEL]: That's all.

Thank you.

May I—let me first ask you—

[DEFENSE COUNSEL]:

Q. You don't know, Officer, do you, the circumstances under which that paper from which you read was made, do you?

A. I don't know who made it, no.

Q. Well, you don't know the circumstances under which it was made?

A. I don't.

Q. Where it was made, when it was made, what information the person had who made it?

A. No.

Q. You don't know any of those things and you don't know whether that was taken from some other books or records or not, do you?

A. I don't know it to be a fact, no.

[DEFENSE COUNSEL]: That's all.

THE COURT: Where was that paper before you brought it here?

[DEFENSE COUNSEL]: I didn't hear that question, your Honor.

THE WITNESS: Where was it? These are kept in the records section. It was made and kept along with the folder on Graver's Bar.

THE COURT: You didn't say that before. This is a folder kept on Graver's Bar?

THE WITNESS: Yes, sir.

[DISTRICT ATTORNEY]: Your Honor, I think I can clear this up.

THE COURT: All right. But I want it—this is a folder that is kept particularly for Graver's Bar?

THE WITNESS: Yes, your Honor.

THE COURT: What you read from was extracted from that folder?

THE WITNESS: Yes, sir.

## REDIRECT EXAMINATION

[DISTRICT ATTORNEY]:

Q. Sergeant Bitts, is it standard procedure to the City Police Department to keep a record on calls and cars dispatched to each of the bars in Lancaster?

A. Yes, it is.

Q. And was this folder on Graver's Bar made in the course of that standard procedure of creating that record?

[DEFENSE COUNSEL]: Objection.

He has already testified he doesn't know when, how it was made or by whom.

THE COURT: He may answer.

THE WITNESS: Yes, this is procedure.

[DISTRICT ATTORNEY]:

Q. And you took this material from that folder?

A. Yes.

[DISTRICT ATTORNEY]: Thank you very much.

## RECROSS EXAMINATION

[DEFENSE COUNSEL]:

Q. Officer, do you have any folders of any other bars?

A. Not with me, no.

Q. Can you say whether the information contained in that folder or the size of that file is unusual for bars in the southeast area of Lancaster?

A. No, I can't say.

Q. You can't say?

A. No.

Q. You wouldn't say it is unusual would you?

A. I wouldn't say.

[DEFENSE COUNSEL]: Thank you.

(The witness was excused.)

Such testimony is so utterly lacking with respect to the reliability, authenticity and manner of preparation of the police logs that it must be concluded that the trial judge abused his discretion in holding that such evidence was qualified for admission under the Business Records as Evidence Act.