534 A.2d 1104

**COMMONWEALTH of Pennsylvania**

v.

**Charles HEMINGWAY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 26, 1987.

Filed Dec. 14, 1987.

Reargument Denied Feb. 2, 1988.

Robert A. Crisanti, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before: McEWEN, JOHNSON and WATKINS, JJ.

WATKINS, Judge:

This submitted case comes to us on appeal from the Judgment of Sentence imposed February 14, 1986, in the Court of Common Pleas of Allegheny County sentencing the appellant, Charles Hemingway, to a term of imprisonment of three and one-half to seven years.

The history of this case as set forth in the trial court opinion is as follows:

The defendant, Charles Hemingway, was arrested on December 6, 1984, on charges of rape and burglary. On December 23, 1985, the defendant was found guilty by a jury as charged. The Honorable Judge John Feeney was the trial judge at the time and left the bench on December 31, 1985, with the instant case still pending.

The Defendant, through his attorney, filed post-trial motions in the nature of Motion for a New Trial and/or Arrest of Judgment, and a Petition for Reconsideration of Sentence both of which were denied.

The defendant was sentenced by the Honorable Walter R. Little, on February 14, 1986, to a term of incarceration of three and one-half (3½) years to seven (7) years on the count of rape. As to the second count of burglary there was a determination of guilt without further penalty ordered.

The defendant appealed his judgment of sentence which is now before the Court ...

Appellant presents the following questions for our consideration:

1. Was appellant denied effective assistance of counsel when trial counsel failed to obtain testimony from known witnesses concerning the prior relationship between the appellant and (the victim)?

2. Was appellant denied effective assistance of counsel when trial counsel failed to admit the first photo array into evidence?

3. Did (the) trial court err in allowing testimony on the results of the rape kit under the Uniform Business Records As Evidence Act?

4. Was appellant denied his constitutional right to confront and cross-examine the criminalist who prepared the rape kit on (the victim)?

In his first issue appellant asserts that he was denied his constitutional right to effective assistance of counsel when trial counsel failed to obtain testimony concerning the prior relationship between appellant and the victim from known witnesses, including Mattie Hemingway.

■ When asserting ineffective assistance of counsel in this context, appellant is required to show that counsel was made aware of the existence of the witnesses, what material testimony the witnesses would have provided, and how that testimony would have been more likely to have provided a different outcome at trial. *Commonwealth v. Polk*, 347 Pa.Superior Ct. 265, 500 A.2d 825 (1985).

■ An affidavit signed by Mattie Hemingway recited that she would have been able to testify that the victim came to her (Mattie Hemingway's) house prior to July, 1984, looking for the appellant. The affidavit further represented that Barbara Wilson would have testified, if called, that the victim and appellant had a prior relationship.

Appellant's defense at trial was that he was not the man who raped the victim. Whether or not appellant had a prior relationship with the victim was immaterial to appellant's asserted defense. There was no offer in the affidavit that Mattie Hemingway or Barbara Wilson were eye witness to the crime, or that they could testify concerning the appellant's whereabouts on the morning when the rape took place.

In light of the specific defense asserted by appellant at trial, counsel was under no obligation to present this fundamentally irrelevant and immaterial evidence to the jury. Accordingly we find appellant's claim to be without merit.

■ In his second issue appellant contends that he was denied effective assistance of counsel when trial counsel failed to admit the first photo array into evidence. In addressing this issue the trial court stated:

The case law on the admission of a photograph as evidence at trial is clear. The admission of photographs is largely within the discretion of the trial judge. (see *Piso v. Weirton Steele [Steel] Co., Division of Nat. Steel Corp.*, 235 Pa.Superior Ct. 517, 345 A.2d 728 (1975), *Semet v. Andorra Nurseries, Inc.*, 421 Pa. 484, 219 A.2d 357 (1966)). A photograph to be admitted into evidence must first be relevant and the trial judge has the discretion to reject a photograph on the grounds that the photograph is unnecessary. (see *Adamczuk v. Holloway*, 338 Pa. 363, 13 A.2d 2 (1940)).

(Trial court opinion, p. 7)

With these considerations in mind the trial court concluded:

... The relevancy of the photo sought to be introduced by defense counsel is unclear. A review of the records shows that the defense counsel also failed to move the photo into evidence; thus any rights for it's (sic) admission were waived ...

(Trial court opinion, p. 8)

Appellant concedes that it cannot be known what effect a comparison of the first and second arrays could have had on the jury because the first array is not part of the record. Appellant only speculates that the effect *might* "have impeached the testimony of (the victim) concerning her subsequent identification of appellant as the assailant." (Appellant's brief at 12). Presented with nothing more than speculation, we cannot conclude that trial counsel was ineffective. Accordingly, we find this claim to be without merit.

■ In his third issue appellant contends that the trial court erred by allowing testimony on the result of the "rape kit" under the Uniform Business Records as Evidence Act.

Appellant asserts that testimony by Jean Austin, a criminalist at the Allegheny County Crime Laboratory, regarding records of various tests conducted by another criminal-

ist who performed the "rape kit" on the victim, should not have been found admissible by the court.

Whether a document should be admitted under the "business records" exception to the hearsay rule is within the discretion of the trial court, provided that authority is exercised within the bounds of the Uniform Business Records as Evidence Act. See *Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa.Superior Ct. 333, 455 A.2d 637 (1982).

In *Isaacson v. Mobil Propane Corporation*, 315 Pa.Superior Ct. 42, 461 A.2d 625 (1983), this Court summarized a three part test to determine if a medical report was admissible under the business records exception to the hearsay rule:

A medical report is admissible under the business records exception to the hearsay rule if the report: (1) was made contemporaneously with the events it purports to relate, (2) at the time the report was prepared, it was impossible to anticipate reasons which might arise in the future for making a false entry in the original and (3) the person responsible for the statements contained in the report is known. *Isaacson*, supra, 315 Pa.Superior Ct. at 49, 461 A.2d at 629.

In addressing this issue in the case *sub judice* the trial court concluded:

There was a full hearing on the admission of the medical evidence of the crime lab which indicates that the requirements of the business records exception of the hearsay rule (see T.T. pg. 143–145) standards were met and the record admitted. The crime laboratory report was performed in the normal course of business by an Allegheny County Crime Laboratory employee. There was no known reason to believe that Dirk Jamses, the criminologist who performed the test would want to falsify the report. Finally, Dirk Jamses was a criminalist employed by Allegheny County Crime Laboratory in the section of microscopy, where rape tests are performed. Therefore,

as previously stated (the) test for business records exception was met.

(Trial court opinion, pp. 6–7)

In *Williams v. McClain*, 513 Pa. 300, 520 A.2d 1374 (1987), however, the Supreme Court of Pennsylvania, after considering the three part test in *Isaacson*, supra, concluded:

> ... These three factors are helpful in determining whether a business record is admissible. A report that contains nothing but facts, and meets this three part test may be admissible under the Business Records Act. Simply meeting these three factors, however, does not guarantee the admissibility of a record under the Business Records Act ...

> ... Under this exception, hospital records have been admitted to show the fact of hospitalization, treatment prescribed and symptoms found. *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975); *Platt v. John Hancock Mutual Life Insurance Company*, 361 Pa. 652, 66 A.2d 266 (1949). As Superior Court noted in *Commonwealth v. Seville*, 266 Pa.Superior Ct. 587, 405 A.2d 1262 (1979):

>> No such doubt as to reliability and accuracy are entertained when a record is offered merely to prove facts, such as the event of hospitalization, treatment prescribed, symptoms given, or the existence of some readility ascertained substance or chemical within the body. *Id.*, 266 Pa.Superior Ct. at 592, 405 A.2d at 1264.

> This Court, however, has consistently held that opinion evidence contained in hospital records is inadmissible. *Commonwealth v. DiGiacomo, supra; Jones Appeal*, 419 Pa. 543, 297 A.2d 117 (1972); see also *Morris v. Moss*, 290 Pa.Superior Ct. 587, 593, 435 A.2d 184, 187 (1981). (opinion that person is conscious is not fact free from doubt)

(*Williams, supra*, at pp. 305–306)

In the case *sub judice* Ms. Austin testified on the results of various tests conducted by the criminalist who performed

the "rape kit" on the victim. The results included the finding of spermatozoa on the vaginal smear and swabbing, the non-secretor status of the victim, the secretor status of appellant, the determination that the victim has type A blood, the determination that appellant had type O blood and the findings in the pubic and head hair samples of the victim as well as the results of tests done on the night clothing of the victim.

Although this court has found on occasion that hospital records are admissible to show hospitalization, treatment and symptoms, *Commonwealth v. Seville*, 266 Pa.Superior Ct. 587, 405 A.2d 1262 (1979); *Commonwealth v. Campbell*, 244 Pa.Superior Ct. 505, 368 A.2d 1299 (1976) (finding of spermatozoa in prosecutrix vagina must be treated as fact and not as medical conclusion), it has more consistently held that opinions, diagnoses and conclusions are not admissible under the Act. *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975); *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974). This evidence is excluded because it is expert testimony and is not admissible unless the doctor who prepared the report is available for in-court cross-examination regarding the accuracy, reliability and veracity of his opinion. *Commonwealth v. McNaughton*, 252 Pa.Superior Ct. 302, 381 A.2d 929 (1977). Cross-examination makes possible the exposure of errors and omissions in the preparation of the report and the accuracy of the opinions based thereon. The only possible means of assuring this is to permit in-court cross-examination of the party who prepared the report. *Commonwealth v. Seville*, supra.

The criminalist who prepared the rape kit was not present at appellant's trial consequently there was no opportunity to cross-examine him.

Because the medical report was offered to prove more than the event of hospitalization, treatment prescribed, symptoms given, or the existence of some readily ascertainable substance of chemical within the body (with the exception of the finding concerning the presence of spermatozoa,

*Commonwealth v. Campbell, supra* [1]) and because appellant was deprived of the opportunity to cross-examine the criminalist who prepared the report, we will reverse appellant's Judgment of Sentence and remand for a new trial.

Judgment of sentence reversed; case remanded for new trial.

---

1. *Commonwealth v. Campbell,* 244 Pa.Superior Ct. 505, 368 A.2d 1299 (1976), addressed a considerably narrower factual situation than the instant case. In *Campbell* the hearsay testimony was limited to the *fact* of the existence of sperm in the vagina, while, the testimony in the instant case concerns not only the existence of sperm, but the non-secretor status of the victim, the secretor status of the appellant, the pubic hair test, the head hair test and the test upon the night clothes of the victim.