**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brian RAAB, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2003.

Filed March 15, 2004.

Neils C. Eriksen, Jr., Langhorne, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Doylestown, for Com., appellee.

BEFORE: HUDOCK, JOYCE, JJ., and McEWEN, P.J.E.

OPINION BY McEWEN, P.J.E.:

¶ 1 Appellant, Brian Raab, brings this appeal from the judgment of sentence to serve an aggregate term of imprisonment of from six months to twenty-three months, imposed following a non-jury trial in which appellant was convicted of driving while under the influence of alcohol, and driving with a suspended license—DUI related. We are constrained to reverse the convictions and vacate the judgment of sentence.

¶ 2 The events that gave rise to this prosecution began on February 12, 2002, when appellant was stopped by Officer Joseph Hanusey, of the Plumstead Township Police Department, on suspicion of drunk driving. Appellant was asked to perform field sobriety tests, during which he swayed, exhibited poor balance, and emitted an odor of alcohol. Based on this information, Officer Hanusey arrested appellant, charging him with driving under the influence and driving with a suspended license. He transported appellant to Doylestown Hospital where blood was drawn and tested. The blood test revealed appellant had a blood-alcohol content of .19.

¶ 3 Following the arrest, pursuant to routine procedures, Officer Hanusey prepared an investigative report regarding the circumstances of the arrest, and filled out in longhand a draft affidavit of probable cause. This handwritten draft was subsequently presented to a District Justice in a formal typed affidavit of probable cause, and was signed in the presence of the District Justice. The affidavit recited:

On February 12, 2002, at approximately 0055 hours, your affiant, while in a marked patrol vehicle and in full uniform wearing a badge of authority and employed by the Plumstead Township Police Department, did come behind a brown Ford van westbound on Pt. Pleasant Pk. in the area of Moyer Rd. Your affiant followed this vehicle for .6 miles at a speed of 62 mph. This area has a speed limit of 45 mph. Also while following behind this vehicle, I noted that several times the vehicle drifted its left

side tires over the center line [and] was straddling this line. I conducted a traffic stop on PA reg. DTK 9213. I approached [and] request[ed] driver and vehicle information from the operator [and] sole occupant. I was given an expired OLN of Brian Raab. While conversing with him, I could detect the strong aroma an alcoholic beverage. I also noted slightly slurred speech [and] slowed, lethargic hand/eye coordination.

Tragically, on May 18, 2002, Officer Hanusey was killed in the line of duty. Consequently, he was unavailable to testify at the pre-trial suppression hearing at which appellant challenged the Officer's probable cause to make the initial stop of his vehicle.

¶ 4 At the suppression hearing the Commonwealth introduced both the handwritten form of affidavit and also the typewritten affidavit of probable cause.[1] Appellant objected to the admission of these materials on the grounds that the handwritten affidavit was hearsay,[2] and the typewritten affidavit was in turn based upon the handwritten one. The trial court, after considering the legal briefs submitted by the parties, chose to admit the challenged affidavits, and, based primarily on that evidence, concluded that the Officer Hanusey had probable cause to stop appellant's vehicle. When the court denied the motion to suppress, appellant proceeded to a nonjury trial, and was found guilty of the above stated offenses. Sentence was imposed and this appeal followed.

¶ 5 Appellant, in the brief filed with this Court, now presents the following questions for our review:[3]

> Whether police reports are admissible in a suppression hearing to establish probable cause to stop a vehicle, where the author of the report is deceased and unavailable to testify?

> Whether the trial court erred in denying appellant's motion to suppress?

Since the resolution of appellant's first question controls the second, we need only address that single issue.

¶ 6 The standard of review governing a challenge to an evidentiary ruling dictates that an appellate court may only reverse the ruling of a trial court upon a showing that the trial court abused its discretion. *See: Commonwealth v. Begley,* 566 Pa. 239, 265, 780 A.2d 605, 620 (2001); *Commonwealth v. Claypool,* 508 Pa. 198, 203–204, 495 A.2d 176, 178 (1985). An abuse of discretion has been defined as "the overriding or misapplication of law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record." *Commonwealth v. Viera,* 442 Pa.Super. 348, 659 A.2d 1024, 1028 (1995), *appeal denied,* 543 Pa. 713, 672 A.2d 307 (1996), *citing Commonwealth v. Kubiac,* 379 Pa.Super. 402, 550 A.2d 219, 223 (1988), *appeal denied,* 522 Pa. 611, 563 A.2d 496 (1989).

¶ 7 Appellant contends that the trial judge misapplied the law when he chose to admit the affidavits prepared by the ar-

---

1. The Commonwealth also introduced a videotape showing the movement of appellant at the scene following the initial stop, and presented Plumstead Township Chief of Police Duane Hasenauer, who testified as to the police department's routine in preparing a case file for each reportable crime, and the inclusion within that file of an investigative report.

2. "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c).

3. It bears mention that these questions for review have been restated to comply with Pa.R.A.P. 2116.

resting officer under the business records exception set forth in the Pennsylvania Rules of Evidence.[4] That Rule provides:

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

**(6) Records of Regularly Conducted Activity**

A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness... unless the sources of information or other circumstances indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Pa.R.E. 803(6).

¶ 8 We begin our analysis by echoing the astute observations penned by the eminent Justice, now Chief Justice, Ralph J. Cappy:

[T]he rule against hearsay is a rule of exclusion, i.e., hearsay is generally not admissible. This is so because a

hearsay statement lacks guarantees of trustworthiness fundamental to the Anglo–American system of jurisprudence. Perhaps such a statement's

most telling deficiency is it cannot be tested by cross-examination. According to Dean Wigmore, cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, *supra*, § 1367. Nor is the declarant under oath when the out of court statement is uttered. This court has long recognized the oath requirement as a further assurance of reliability. [citations omitted].

*Heddings v. Steele*, 514 Pa. 569, 573, 526 A.2d 349, 351 (1987). This Court has long recognized that "to insure a party the guarantees of trustworthiness resulting from a declarant's presence in court, a proponent of hearsay evidence must point to a reliable hearsay exception before such testimony will be admitted." *Heddings*, 514 Pa. at 574, 526 A.2d at 352. Thus, the burden of production is on the proponent of the hearsay statement to convince the court of its admissibility under one of the exceptions. *Carney v. Pennsylvania R.R. Co.*, 428 Pa. 489, 240 A.2d 71 (1968).

*Commonwealth v. Smith*, 545 Pa. 487, 491–492, 681 A.2d 1288, 1290 (1996). *See also: Commonwealth v. Romero*, 555 Pa. 4, 13, 722 A.2d 1014, 1018 (1999) (footnote omitted), *cert. denied*, 528 U.S. 952, 120 S.Ct. 376, 145 L.Ed.2d 293 (1999) ("[W]here the evidence at issue does not satisfy an exception to the hearsay rule, confrontation rights [under the United States and Pennsylvania Constitutions] are implicated.").

¶ 9 The drafters of Pa.R.E. 803(6) included within the Official Comment to the Rule the admonition that "Pa.R.E. 803(6)

---

**4.** Although the trial judge also referred to the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108(b), in support of his decision, the hearing was governed by the Pennsylvania Rules of Evidence. *See:* Pa.R.E.

101(a). The law as developed under the Uniform Business Records as Evidence Act is relevant, however, since that Act was the precursor to Pa.R.E. 803(6).

*does not* include opinions and diagnoses" (emphasis added),[5] a choice that was intended to conform the Rule to the pre-existing decisional law of this Commonwealth. *See: Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974).

¶ 10 In *McCloud,* the Pennsylvania Supreme Court held that it was error to admit the written report of a medical examiner that contained an opinion without subjecting the preparer of that report to cross-examination,[6] reasoning:

> Had the medical examiner been called to testify, the opinions, conclusions, and interpretation contained in the autopsy report would have been subject to cross-examination. The defense would have been able to submit the reliability of the examiners' opinion to the jury's scrutiny. Any weakness could have been unearthed. However, "[a]n opinion expressed in hospital records [were they to be admitted without the presence of the physician] *is subject to no such searching inquiry as to accuracy, soundness, and veracity.* Hence the danger in admitting them is very great. However admirable, whatever the character and reputation of the institution from which records come, to deny a defendant the opportunity to test the correctness of the diagnosis and ascertain the qualifications of the assertor . . . is to deny [him] a substantial right." *Paxos v. Jarka Corp.,* [314 Pa. 148] at 154, 171 A. [468] at 471 [1934]. The "substantial right" here denied was the right to cross-examine; the medical examiner's opinion was thus insulated from effective challenge.

*Commonwealth v. McCloud, supra,* 457 Pa. at 313–314, 322 A.2d at 655–656 (emphasis supplied)(footnote omitted).[7] *Cf: Commonwealth v. Karch,* 349 Pa.Super. 227, 502 A.2d 1359 (1986) (blood alcohol test results were admissible under hospital records exception).[8]

¶ 11 In the present case the introduction of the deceased police officer's affidavits did not afford appellant an opportunity to cross-examine the officer regarding the critical matters at issue in the suppression hearing, namely, the officer's opportunity to observe the van driven by appellant,

---

5. The exclusion of opinions and diagnoses distinguishes the Pennsylvania Rule from the Federal Rule. *See:* F.R.E. 803(6).

6. The Supreme Court in *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974), was addressing the admissibility of evidence under the precursor to Rule 803(6) of the Pennsylvania Rules of Evidence, *i.e.,* the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108(b).

7. The Commonwealth seeks to distinguish the instant case from *Commonwealth v. McCloud, supra,* by contending that the evidence here speaks only to an "act," "event," or "condition," as opposed to an opinion. This argument is somewhat disingenuous in that the only "event" which the affidavit establishes is that the affiant stopped appellant's vehicle, a fact which is not disputed. The reason for the stop, however, is the basis of the Commonwealth's proffer of this evidence, and that reason was undeniably founded upon the opinion of the arresting officer as to whether the van operated by appellant was traveling in excess of the posted speed limit and crossed the center line.

8. The hearsay exception at issue in *Commonwealth v. Karch,* 349 Pa.Super. 227, 502 A.2d 1359 (1986), was the "hospital records exception," which permitted the admission of "the fact of hospitalization, treatment prescribed, and symptoms given", but not the "opinion contained in the records and proffered as expert testimony" unless the declarant was available for cross-examination. *Commonwealth v. DiGiacomo,* 463 Pa. 449, 455–456, 345 A.2d 605, 608 (1975). *See:* Pa.R.E. 803(4), **Statements for Purposes of Medical Diagnosis or Treatment,** and the Comment which provides that "[s]tatements made to persons retained solely for the purpose of litigation are not admissible under this rule." *See also: Commonwealth v. Smith,* 545 Pa. 487, 681 A.2d 1288 (1996).

calculate its speed, the extent of any incursion into the other lane, the presence of other vehicles on the roadway, the existence of bias, and the officer's ability to draw conclusions from the observable facts. Moreover, the officer's affidavit was not a "routine" report, but a statement of events and opinions specifically prepared for this prosecution and to justify the stop of appellant's vehicle. Consequently, just as in *Commonwealth v. McCloud, supra,* the credibility and competence of the author of the report were critical to the Commonwealth's case.[9] In fact, in this instance the affidavit was the foundation stone upon which the Commonwealth sought to sustain its burden of establishing that the stop of appellant's vehicle was justified.[10] Thus, we are compelled to reverse the decision of the trial court.

¶ 12 We are mindful, of course, of the apparent benefit that the tragic premature death of the arresting officer has visited upon the appellant, and the fact that this report may have been admissible under the Federal Rules of Evidence, which contain a "residual" exception to the hearsay rule. *See:* F.R.E. 807.[11] The Pennsylvania Supreme Court, however, in promulgating the Pennsylvania Rules of Evidence, specifically rejected this exception. *See:* Pa.R.E. 804(b)(5). This Court may not dodge the clear mandate of the Rules under the guise of opining that another rule of evidence is preferable, and we leave to the expertise of the Rules Committee the decision as to whether the Pennsylvania Rules of Evidence should be amended to address a situation like the present.

¶ 13 Judgment of sentence vacated. Jurisdiction relinquished.

¶ 14 JOYCE, J., Files a Dissenting Opinion.

9. It bears emphasis that none of the cases relied upon by the Commonwealth in support of its argument that law enforcement reports are admissible as business records involved direct evidence of the crime that was then being prosecuted. *See e.g.: Commonwealth v. Graver,* 461 Pa. 131, 334 A.2d 667 (1975) (evidence introduced to show existence of prior police reports); *Commonwealth v. Russell,* 459 Pa. 1, 326 A.2d 303 (1974) (evidence introduced to show existence of relationship between defendant and victim); *Commonwealth v. Kelly,* 245 Pa.Super. 351, 369 A.2d 438 (1976) (evidence of police property receipt and two police reports were not basis of defendant's convictions for perjury, bribery, and obstruction of justice); *Ariondo v. Munsey,* 122 Pa.Cmwlth. 475, 553 A.2d 94 (1989)(evidence introduced to prove notice to Commonwealth of defective condition).

10. Following the close of evidence at the conclusion of the suppression hearing, the trial judge stated:
Just so that we're crystal clear, I don't believe that absent the information conveyed by Officer Hanusey concerning his observations of the operation of the vehicle, that there would be—the Commonwealth would be able to demonstrate ample reason for the stop.
N.T. August 29, 2002, p. 21.

11. Federal Rule of Evidence 807 provides:
A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.
F.R.E. 807.

DISSENTING OPINION BY JOYCE, J.:

¶ 1 While the Majority has provided a careful analysis and perceptive rationale of position, I must respectfully dissent. In my view, the trial court did not err in admitting Officer Hanusey's affidavit of probable cause under Pa.R.E. 803(6).

¶ 2 The suppression court admitted the affidavit of probable cause drafted by Officer Hanusey pursuant to the Uniform Business Records as Evidence Act. As the Majority correctly notes, the proper basis under which to consider the report's admissibility is Rule 803(6) of the Pennsylvania Rules of Evidence. That Rule provides:

(6) Records of Regularly Conducted Activity

A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The Majority has concluded that the contents of the affidavit of probable cause constituted officer Hanusey's opinion and was therefore inadmissible under Pa.R.E.

803(6) and *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974). It is from this conclusion that I depart.

¶ 3 The dissention between my view and that of the Majority's on whether Officer Hanusey's affidavit of probable cause contained opinions or were recordations of an event, act or condition is a prevalent conundrum. As aptly set forth by Judge, now President Judge, Del Sole:

In the past, this court has had numerous occasions to address the issue of what constitutes opinion as opposed to fact for purpose of admission of a hospital record under the Uniform Business Records as Evidence Act. "Under this exception, hospital records have been admitted to show the fact of hospitalization, treatment prescribed and symptoms found." *Commonwealth v. Hemingway,* 369 Pa.Super. 112, 118, 534 A.2d 1104, 1107 (1987) *citing Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975) (additional citations omitted). Opinion evidence contained in hospital records, however, is not admissible. *Id.* "The rationale for excluding medical opinion in hospital records lies in the fact that such evidence is expert testimony and is 'not admissible unless the doctor who prepared the report is available for in-court cross-examination regarding the accuracy, reliability and veracity of his opinion.'" *Commonwealth v. Seville,* 266 Pa.Super. 587, 591, 405 A.2d 1262, 1264 (1979) *citing Commonwealth v. McNaughton,* 252 Pa.Super. 302, 307, 381 A.2d 929, 931 (1977).

Drawing the line between what is fact and what is opinion is often difficult and has led to varying results. *See Williams v. McClain,* 513 Pa. 300, 520 A.2d 1374 (1987) (hospital record that contained impressions of social worker that plaintiff's pain may have a psychosomatic source was found to be inadmis-

sible); *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975) (medical records custodian's testimony regarding diagnosis, as it was contained in hospital record, of injuries sustained by murder victim was inadmissible); *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974) (autopsy report offered to prove essential element of crime or to connect Appellant to crime where Appellant was denied opportunity to cross-examine physician who prepared report, was inadmissible); *Commonwealth v. Hemingway*, 369 Pa.Super. 112, 534 A.2d 1104 (1987) (results of "rape kit", excluding the finding of spermatozoa, were held to be wrongly admitted into evidence without testimony of criminalist who conducted tests); [*cf.*] *Commonwealth v. Campbell*, 244 Pa.Super. 505, 368 A.2d 1299 (1976) (hospital record stating that spermatozoa was found in victim's vagina was treated as fact and therefore was admissible); *Commonwealth v. Seville*, 266 Pa.Super. 587, 405 A.2d 1262 (1979), (medical report containing results of blood alcohol test was properly admitted into evidence even though technician who administered the test did not testify at trial); *Commonwealth v. McNaughton*, 252 Pa.Super. 302, 381 A.2d 929 (1977); [sic] (hospital record was inadmissible where it was the sole evidence offered by the Commonwealth to prove an essential element of the offense charged); *Commonwealth v. Green*, 251 Pa.Super. 318, 380 A.2d 798 (1977) (medical report stating that rape victim exhibited "excoriations" to elbow and forehead did not involve a medical diagnosis or opinion and therefore was admissible under Uniform Business Records as Evidence Act).

*Commonwealth v. Xiong*, 428 Pa.Super. 136, 630 A.2d 446, 451–452 (1993). In *Xiong*, the issue was whether counsel was ineffective for failing to object to the admission of the victim's hospital records which had a doctor's notation indicating the victim had no hymen. In deciding whether this statement was an opinion or a fact, the *Xiong* court relied on *Commonwealth v. Green*, 251 Pa.Super. 318, 380 A.2d 798 (1977). *Green* "defined the terms 'medical diagnosis' and 'opinion' as entailing '... a conclusion concerning a condition not visible but reflected circumstantially by the existence of other visible and known symptoms." *Xiong*, 630 A.2d at 452 (citation omitted). Accordingly, the *Xiong* court held that the notation that there was no hymen was a "factual statement recounting the physicians discovery" and concluded that the records were properly admitted under § 6108 and that counsel was not ineffective for failing to object to its admission.

¶ 4 Due to the nature of the profession, a doctor's opinion or diagnosis is more recognizable than what might constitute an opinion by a police officer. There is no case law to distinguish or define an officer's opinion from his observation of an act, event, or condition. Nonetheless, *Xiong*, which relied on the definition in *Green*, is illustrative of what is considered an opinion and excludes Officer Hanusey's observations as such. Also, the common definition of opinion as set forth in Black's Law Dictionary leads me to conclude that the content of the affidavit of probable cause necessary to determine whether Officer Hanusey had probable cause to stop Appellant was a statement of his observations, not his opinion.

¶ 5 An officer has probable cause to stop a vehicle if he reasonably believes that the motorist has committed a violation of the Motor Vehicle Code. 75 Pa.C.S.A. § 3608(b). In the present case, Officer Hanusey's basis for stopping Appellant was a violation of 75 Pa.C.S.A. § 3362,

which prohibits speeding. Since Officer Hanusey was deceased the Commonwealth established probable cause through the admission of his sworn affidavit of probable cause which indicated that:

> The relevant portion of the affidavit of probable cause is as follows: [12]
>
>> [o]n February 12, 2002 at approximately 0055 hours, your affiant [...] did come behind a brown Ford van westbound on Point Pleasant Pike in the area of Moyer Road. Your affiant followed this vehicle for approximately .6 miles at a speed of 62 MPH. This area has a speed limit of 45 MPH....

In my estimation, this portion of the affidavit of probable cause states Officer Hanusey's observations of an act, event or condition, as opposed to his opinion. Unlike the definition of an opinion in *Green*, that Appellant was traveling 62 MPH in a 45 MPH zone for a distance of .6 miles is not "a conclusion concerning a condition not visible but reflected circumstantially by the existence of other visible and known symptoms." The officer's observations were based on an event or act readily visible. They were not the product of deductive reasoning based on circumstantial evidence.

¶ 6 The common sense definition of an opinion defines it as "what the witness thinks, believes, or infers in regard to facts in dispute, as *distinguished from his personal knowledge of the facts themselves.*" Black's Law Dictionary, 6th Edition (1990) (emphasis added). Under this definition, Officer Hanusey's affidavit of probable cause evidences his personal knowledge of the distance over which he followed Appel-

lant traveling at 62 MPH. This observation is no different than observing that the speed limit in the area in which Appellant was traveling was posted at 45 MPH. These facts are not Officer Hanusey's thoughts, beliefs or inferences and, therefore, are not an opinion. Rather, they are a recordation of the acts which he undertook to determine whether Appellant was speeding and his personal knowledge.

¶ 7 Since I conclude that the portions of the affidavit of probable cause necessary to establish probable cause to stop Appellant's vehicle were not opinions, it bears discussion that Rule 803(6) also requires that the source of the information be trustworthy. Indeed, this is the main purpose of the Rule, since the inherent reliability and trustworthiness of the document negates the need for cross-examination. *See Commonwealth v. Xiong, supra.* Clearly, the contents of Officer Hanusey's report were trustworthy. As aptly stated by the trial court:

> [a]fter Officer Hanusey wrote out his observations of events and conditions near the time he observed them, he caused these very statements to be typed, swore to them under oath and submitted them to a judicial authority as the basis for the commencement of criminal proceedings against the Appellant. We can think of few other "business records" buttresses in the same way by corroborating evidence and by the assurance that the person who prepared the documents did so with the knowledge that he had a legal and professional obligation that the documents be truthful and accurate.

---

12. In my opinion, this is the only relevant portion of the affidavit of probable cause since it establishes the officer's grounds for stopping Appellant for speeding. Although there has been discussion regarding the officer's observations of Appellant's vehicle traveling over the center line, Appellant was not charged with 75 Pa.C.S.A. § 3309, driving on roadways laned for travel; thus, consideration of that segment of the affidavit is unnecessary.

Trial Court Opinion, 6/03/03, at 11. Moreover, the other requirements that a custodian of the record testifies to its identity, the mode of its preparation and that it was made in the regular course of business at or near the time of the act, condition or event were all satisfied. Thus, the requisite statutory factors were met to authorize the admission of the record under Pa. R.E. 803(6).

¶ 8 Case law provides that a police officer's report can be admissible if it is deemed trustworthy and is within the purpose of the statutory exception to the hearsay rule. *Commonwealth v. Graver,* 461 Pa. 131, 334 A.2d 667 (1975); *Commonwealth v. Russell,* 459 Pa. 1, 326 A.2d 303 (1974); *Commonwealth v. Kelly,* 245 Pa.Super. 351, 369 A.2d 438 (1976); *Ariondo v. Munsey,* 122 Pa.Cmwlth. 475, 553 A.2d 94 (1989).[13] As I indicated *supra,* I believe these requirements have been met. However, the Pennsylvania Constitution guarantees an accused the right to confront and cross-examine a witness against him; therefore, the purpose of proffered evidence and the prejudice associated with its admission must be evaluated to determine whether there is infringement on this constitutional right. *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653, 655 (1974). "If [the evidence is] offered to prove an essential element of the crime or connect the defendant directly to the commission of the crime" the use of hearsay evidence violates the confrontation clause. *McCloud,* 322 A.2d at 656 *quoting State v. Matousek,* 287 Minn. 344, 350, 178 N.W.2d 604, 608 (1970). Having determined that the submitted evidence was within the parameters of Pa.R.E. 803(6), an analysis as to its prejudice in relation to the confrontation clause must be undertaken next.

¶ 9 In *McCloud,* the defendant was on trial for murder. The medical examiner who performed the autopsy on the victim was unavailable to testify because he was out of town at a medical conference. The trial court allowed the admission of the medical examiner's report and its conclusion to establish the victim's cause of death under the Uniform Business Records as Evidence Act exception to the hearsay rule. Our Supreme Court found that the trial court erred in admitting the medical examiner's conclusion as to cause of death because it established an element of the crime, thereby violating the confrontation clause. Thus, the Supreme Court held "in a homicide prosecution, evidentiary use, as a business records exception to the hearsay rule, of an autopsy report in proving legal causation is impermissible unless the accused if afforded the opportunity to confront and cross-examine the medical examiner who performed the autopsy, absent a compelling necessity." *Id.* The Court noted that the medical examiner's absence because of his attendance of a medical conference did not constitute "compelling necessity to override the constitutional mandate." *Id.* at 656, n. 5.

¶ 10 The *McCloud* decision admonished against the use of hearsay evidence when used to establish the elements of a criminal prosecution. Presently, Officer Hanusey's recorded action of following Appellant for .6 of a mile while he traveled at a speed of 62 MPH in a 45 MPH zone were not being used to establish Appellant's guilt on either the summary speeding offense or the driving under the influence offense. Rather, the hearsay evidence was admitted to determine whether the officer's observations and actions were sufficient for the suppression court to make a

13. None of these cases define what constitutes an opinion versus a recordation of an act, event or condition.

legal determination that the officer possessed probable cause to initiate a traffic stop.[14] Moreover, the holding in *McCloud* prohibited the admission of the medical examiner's report because the Commonwealth used it to establish the legal causation of the decedent's death. This holding was qualified in that the constitutional implication may be overridden if there is "sufficiently compelling necessity." *McCloud*, 322 at 657. The Court noted that "the medical examiner's temporary absence from his official duties to attend a convention [does not constitute] a sufficiently compelling necessity."

¶ 11 Presently, Officer Hanusey was killed during the line of duty one month after he stopped Appellant's vehicle. Admitting into evidence his affidavit of probable cause was the only method by which the Commonwealth could establish probable cause. Again, the information regarding the distance over which he followed Appellant and the speed at which he clocked Appellant was not used to establish the elements of the crimes of which Appellant is accused. Thus, it is difficult to imagine a more compelling reason to admit the hearsay records in contravention of Appellant's right to confront the witness.

¶ 12 As to the admissibility of the remainder of the affidavit of probable cause, I pass no judgment as it is unnecessary for purposes of determining whether the trial court erred in finding that Officer Hanusey had probable cause to stop Appellant's vehicle. Accordingly, I would find that he trial court did not err in admitting the evidence and in denying Appellant's motion to suppress and I would affirm that order. Therefore, I respectfully dissent.

---

**14.** Having noted this distinction, I do not believe that the report could have been used to establish the elements of speeding in order to secure a conviction had this case proceeded to trial pursuant to *McCloud*.

